NO. 5-96-0411

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS,)  Appeal from the

                                    )  Circuit Court of

     Plaintiff-Appellee,            )  Saline County.

                                    )

v.                                  )  No. 95-CF-157

                                    )

JAY BRYANT ROLLINS,                 )  Honorable

                                    )  Michael J. Henshaw,

     Defendant-Appellant.           )  Judge, presiding.

_________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

A person who kills an individual without lawful justification commits murder if, 
in performing the acts which cause death, he either intends to kill or knows such acts create a strong probability of death
.  It follows that a person cannot murder someone who is already dead.  But what if a person mistakenly believes that someone is dead, possesses no intent to kill because of that belief, and in an effort to conceal what he perceives to be a corpse, sinking it into a strip mine lake, he actually drowns that someone?  Defendant's appeal presents the question and asks us to overturn his murder conviction based on the trial court's refusal to instruct on the mistake-of-fact defense under such a circumstance.

The case is about the untimely death of a 46-year-old woman named Judith Ann Crawford.  It features a series of stories fashioned by defendant, her undisputed killer.  Defendant's divergent stories ultimately suggest how and why Judith Ann died.  Whether any version conveys what truly happened to her is open to question. What is not open to question is that Judith Ann's unnatural demise flowed quite naturally from defendant's conduct.

A Saline County jury found defendant guilty of first-degree murder and concealment of a homicidal death.  Defendant now serves life imprisonment for murder and 10 years' imprisonment for concealment of that murder.

This case presents a singular issue drawn from the fact that a component of Judith Ann's death was drowning.  It appears that Judith Ann, despite the mortal wounds she sustained as the result of a beating, held to life until defendant cast her body into the chilly depths of an abandoned strip mine pit called the Blue Hole.  The Blue Hole's waters were chosen by defendant to be the final and secret resting place for Judith Ann's remains.  The pathologist who performed the autopsy could not pinpoint whether Judith Ann's last breath drew air or water.  We are left to wonder whether she died during the protracted beating defendant inflicted, during her lengthy entombment in the stale darkness of defendant's car trunk, or in the cold waters of the Blue Hole.

Thus, defendant asks us to overturn his murder conviction because the trial court refused to instruct the jury about defendant's mistaken belief that Judith Ann was dead when she was committed to her watery grave.  Defendant lays claim to a belief that he had already killed Judith Ann when he chained her body to a concrete block and watched it disappear into the Blue Hole.  He contends that the belief that he submerged a corpse constitutes a mistake of fact that negates the necessary state of mind to kill by the act of drowning.

Defendant argues that absent a mistake-of-fact instruction, there is no assurance that the jury properly decided his guilt for the crime of murder.  He insists that the instruction was a necessary safeguard against a decision wrongfully based on the act of drowning.  Simply put, defendant suggests that the guilty verdict for murder potentially rests on an act that he could not commit with the intent to kill because it was committed against what he believed to be a corpse.  As bizarre as all this seems, defendant offers supreme court reasoning to support his argument.

In 
People v. Crane
, 145 Ill. 2d 520, 585 N.E.2d 99 (1991), our supreme court overturned a murder conviction because the jury was not instructed on the mistake-of-fact defense.  The claimed mistake of fact was the belief that the victim was already dead.  
Crane
, 145 Ill. 2d at 526, 585 N.E.2d at 102.  David Crane reported to authorities that he severely beat Robert Gahan in self-defense.  
Crane
, 145 Ill. 2d at 524, 585 N.E.2d at 101.  Under the belief that the beating was justified but deadly, Crane poured gasoline over Gahan's body and set it ablaze.  
Crane
, 145 Ill. 2d at 524, 585 N.E.2d at 101.  Crane claimed that the act was not intended to kill Gahan, because he believed that Gahan was already dead.  
Crane
, 145 Ill. 2d at 526, 585 N.E.2d at 102.

Our supreme court noted:

"Since (1) defendant's whole case rested upon the concepts of self-defense and mistake of fact, and (2) there exists some evidence upon which a jury could reasonably conclude that defendant burned Gahan under the mistaken belief that he was dead, the failure to give the mistake of fact instruction to the jury cannot be considered harmless."  
Crane
, 145 Ill. 2d at 528, 585 N.E.2d at 102.

At first blush, it appears that 
Crane
 directs a need to honor defendant's request for a mistake-of-fact instruction.  However, our case is different in several significant ways.  Those differences mark a limitation on the mistake-of-fact defense in homicide cases.

Crane persistently claimed that he had reacted to an unprovoked and potentially deadly assault, had severely beaten Gahan, and had panicked when he believed him to be dead.  He insisted that he had only burned the body because he harbored the belief that Gahan was dead.  The State charged the beating and burning as tandem death-producing acts, and the State's experts were unable to conclude whether Gahan was dead or alive when he was subjected to flame.  
Crane
, 145 Ill. 2d at 526-27, 585 N.E.2d at 102.

Here, the State limits its charge to defendant's acts of beating the deceased.  It undeniably proves that the primary cause of death was head injury, with drowning being a possible contributing factor.  Massive brain hemorrhaging, a condition wrought by a pummelling rather than exposure to water, was the undisputed primary cause of death.  Defendant offers nothing to suggest that Judith Ann might have survived her head injuries had she not been cast into the Blue Hole.

More importantly, defendant tenders a host of divergent statements about the death's occurrence, none of which provide an innocent explanation for how Judith Ann came to be in a condition he perceived as dead.  The only statement that includes defendant's belief that he submerged a corpse is a statement that admits to a series of acts that inflict the injuries upon which that mistaken belief is based.  The injuries he admits inflicting are mortal head injuries.  Crane claims to have inflicted fatal injuries 
in self-defense
 before he mistakenly burned Gahan alive.  Defendant claims to have inflicted fatal injuries to a defenseless woman before he mistakenly drowned her alive.                                

A review of the critical evidence in the case is instructive. Authorities sought to question defendant because he and Judith Ann left a Harrisburg, Illinois, nightclub together on the night of Judith Ann's death.  When first interrogated, defendant readily admits that he left the nightclub with Judith Ann.  It is the only fact defendant supplies that is not open to question.

Authorities had already recovered Judith Ann's body when they began to examine defendant.  Fortunately, she had not slipped to the bottom of the Blue Hole's murky depths as defendant had hoped.  Her rapid discovery maintained the evidentiary value of her remains.  The body's condition spoke a truth that betrayed defendant's lies.  She had undeniably incurred varying and sustained violent assaults.

There were lacerations and contusions over the face, chest, abdomen, back, flank, upper arms, forearms, wrists, hands, thighs, knees, lower legs, and ankles.  The hyoid bone in the neck was crushed, six ribs were broken, and the skull was fractured.  The larynx, adrenal gland, kidneys, and intestines sustained internal contusions.

Very little of Judith Ann's anatomy was spared injury.  But her face and head were clearly the prime target.  The pathologist spoke of Judith Ann's "raccoon eyes."  They were severely swollen and black.  There were two separate lacerations on the right eyelid and three separate lacerations on the left eyebrow.  The forehead had a large laceration that exposed the skull bone.  The right forehead had a separate laceration.  The back of the head had three deep lacerations associated with the skull fracture.

The pathologist decided that the primary cause of death was Judith Ann's head injuries.  The head trauma produced subdural and subarachnoid hemorrhaging that produced death.  Because the lungs evidenced pulmonary hyperinflation, drowning was a possible component of Judith Ann's death.

Defendant offered authorities a series of stories and explanations for the injuries.

At first, defendant claimed that his night with Judith Ann was a brief encounter.  He claimed to have left her that night in good spirit and fine health.  Upon further interrogation, he abandoned this attempt to exculpate himself and changed his story.

Defendant next claimed that Judith Ann took a serious fall while riding with defendant on his motorcycle.  He claimed panic because he was driving without a valid motorcycle operator's license.  In order to conceal this traffic violation, he dumped Judith Ann into the Blue Hole.

On appeal, defendant contends that the State's admission of this statement interjects "some evidence" that defendant's initial conduct was innocent.  The jury could believe that Judith Ann's injuries were accidental but further believe that the drowning was intentional and convict based on it.  Therefore, defendant argues that a mistake-of-fact instruction was essential.                   We note that this admission is inconsistent with Judith Ann's injuries, was abandoned by defendant before the interrogation was over, and is never reasserted as an accurate account of what happened.  However, since it constitutes "some evidence" of accidental rather than criminal infliction of injuries, had defendant related a belief that the motorcycle accident injuries were deadly, defendant's argument might have merit.  Defendant did not relate the motorcycle accident's injuries to any belief that Judith Ann was dead when cast into the Blue Hole.  Defendant related such belief only later when he spoke of injuries intentionally inflicted.      

Upon further interrogation, defendant abandoned this attempt to exculpate himself and changed the story.  He claimed that he kicked Judith Ann and slammed her to the ground as the result of an argument over sexual impotence.  He first claimed that in leaving her, he accidently hit her with the car, but he altered this claim during the same interrogation session.  He recanted the part about the car striking Judith Ann and claimed that Judith Ann's head struck the bumper during the argument.  After her head was struck, he picked her up by the throat and put her in the car's trunk.

Again, defendant argues that the State's admission of this statement interjects "some evidence" that defendant's initial conduct was innocent.  Again, defendant does not relate the injuries inflicted in this incident to any belief that Judith Ann was dead when cast into the Blue Hole.  In fact, he does not say anything about the Blue Hole in this account.           

Upon further interrogation, defendant changed his story a final time and offered a far more detailed and inculpatory account of what happened.

Defendant claimed that he took Judith Ann to Andrew Wilkins' house, where he had sexual intercourse with her.  Wilkins asked defendant if he too could have sex with Judith Ann, and defendant gave his permission.  Defendant explained that Judith Ann viewed this treatment as rape.  She struck defendant with the heel of her shoe.  Defendant retaliated by striking back.

He drove Judith Ann to a remote area of Saline County.  According to defendant, Judith Ann, still infuriated over her rape, pulled a knife from her purse.  Defendant's explanation of what followed is augmented by the fact that he claims to have trained in the martial arts.

Defendant disarmed Judith Ann.  After obtaining her weapon, he stabbed her, slammed her head into the automobile hood, and threw her to the ground.  He picked her up in order to slam her face back into the ground.  He also kneed her in the head, kicked her in the ribs, kicked her in the chest, and slammed her head against the bumper.  When the beating was over, defendant threw Judith Ann into the trunk and drove back to Wilkins' house to use the bathroom.

After the defendant freshened up, he drove to Harrisburg to gather a concrete block and chain.  Along the way, he stopped to visit with Aloma Bradford for about an hour and a half.  After his visit, he drove to the Blue Hole and opened the trunk. Defendant was annoyed at gurgling noises that emanated from Judith Ann's body.  He "stomped" the body until it submitted to silence.  The quieted body was chained to a concrete block and rolled into the Blue Hole.  Defendant claimed that he thought Judith Ann was dead when he disposed of her body.

We can surely accept defendant's contention that evidence exists upon which a jury could reasonably conclude that defendant cast Judith Ann into the Blue Hole under the mistaken belief that she was already dead.  Defendant certainly did everything in his power to kill her.  Leaving nothing to chance, he silenced the involuntary gurgling of a dying and defenseless woman with further violent assaults before committing her to the strip mine pit.  He no doubt could see the ghastly product of his deeds before he cast it into the Blue Hole.

Notwithstanding, we cannot accept the contention that defendant is entitled to a mistake-of-fact defense under the circumstances presented.  Defendant does not claim that his violent assaults on a middle-aged woman were in any way justified.  Nor can he contest that massive injuries to the brain were the primary cause of death.  Defendant's belief does not negate his deadly intent, even though drowning was a possible component of Judith Ann's death.  His only mistake was a belief that he had already achieved his murderous bent by the use of extreme and unjustified force.  If the Blue Hole's waters aided Judith Ann's bleeding brain to hasten her inevitable death, such fact does not negate defendant's intent to commit murder.  The mistake-of-fact defense does not permit exoneration upon the absurd claim that defendant's intent was to merely bludgeon, not bludgeon and drown, his prey.

While the mistake-of-fact defense applies to those who attempt to destroy or conceal a body believed dead as the result of potentially justified conduct (
Crane
, 145 Ill. 2d at 526-28, 585 N.E.2d at 101-02) or to those who attempt to destroy or conceal a body believed dead as the result of someone else's criminal conduct, it cannot apply to those who attempt to destroy or conceal a body believed dead as the result of their own criminal conduct.  If an assailant inflicts unjustified wounds to the extent that he reasonably believes he has killed someone, misapprehension of his crime's effect does not license incineration, drowning, or dismemberment to destroy evidence of what happened.  If a defendant attempts to conceal his own criminality by further acts that actually contribute to an end defendant mistakenly thinks he has already produced, he cannot escape criminal responsibility for murder.  We think the trial judge employed a sound and proper course when he refrained from interjecting the mistake-of-fact defense into this case.

Accordingly, we affirm.

Affirmed.

HOPKINS, J., and MAAG, J., concur.