15 November 1999

       No. 2--97--0761    

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

DAVID CRANE,

Defendant-Appellant. 

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Winnebago County.

No.  87--CF--32

Honorable

Gerald F. Grubb,

Judge, Presiding.

 

JUSTICE COLWELL delivered the opinion of the court:

Following a February 1997 trial, a jury found defendant, David Crane, guilty of murder.  It had been alleged that defendant "beat and burned" the victim, Robert Gahan, knowing that such acts created a strong probability of Gahan’s death.  See Ill. Rev. Stat. 1987, ch. 38, par. 9--1(a)(2) (now 720 ILCS 5/9--1(a)(2) (West 1996)).  Defendant appeals his conviction, contending (a) that the State failed to prove him guilty beyond a reasonable doubt, (b) that the State should have been barred from presenting certain evidence at trial, (c) that double jeopardy prohibited the State from pursuing a death-by-burning theory, (d) that the prosecutor made several improper and prejudicial remarks during closing argument, and (e) that the jury was improperly instructed.  We affirm.

I.  FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 1986, Gahan’s charred remains were discovered near some railroad tracks in Winnebago County.  Defendant was charged in February 1987 with Gahan’s murder.  Since then, defendant has been tried and convicted of the charge three times.  The first jury trial began in August 1987. The State presented evidence that Gahan had been beaten in the head but had died as a result of being burned.  However, our supreme court upheld the appellate court's decision to reverse defendant's conviction and remand.  
People v. Crane
, 145 Ill. 2d 520, 523 (1991).  The court held that, since there was some evidence that defendant set Gahan’s body on fire under the mistaken belief that Gahan was dead, defendant was entitled to a mistake-of-fact instruction.  
Crane
, 145 Ill. 2d at 526-28.

In February 1994, a grand jury returned a five-count "Superseding Bill of Indictment" against defendant, charging him with murder.  Each of the five counts alleged that defendant "beat and burned" Gahan without lawful justification.  Count I alleged that defendant intended to kill Gahan; count II alleged that defendant intended to do great bodily harm to Gahan; count III alleged that defendant knew his acts created a strong probability of causing Gahan’s death; count IV alleged that defendant knew his acts created a strong probability of great bodily harm to Gahan; and count V alleged that defendant killed Gahan while committing a forcible felony, robbery.  The trial court dismissed count V on February 25, 1994.

The second trial was held in March 1994.  The jury convicted defendant of murder under count III (strong probability of death).  However, we reversed the conviction on the basis that the trial court erroneously denied defendant’s request for an aggravated battery instruction.  
People v. Crane
 (
Crane II
), No. 2--94--0692 (1996) (unpublished order under Supreme Court Rule 23).  Again, a new trial was ordered.

Early in 1997, the State voluntarily dismissed with prejudice counts I, II, and IV of the superseding indictment.  Defendant therefore went to trial under count III only.

The third trial began in February 1997.
  David Swanson, a deputy coroner, testified for the State.  He observed Gahan’s remains on April 21, 1986, and stated that 98% of Gahan’s body was burned and that 60-70% of it was reduced to ashes.  Following a police investigation, defendant was identified as a prime suspect.

In January 1987, Detectives Roger Costello and Larry Schultz traveled to Las Cruces, New Mexico, to interview defendant, who was being held on a traffic charge.  Detective Schultz testified as to what defendant told them during that interview.  Carrying a pair of "nunchucks" in his pants, defendant was hitchhiking on the night of April 20, 1986.  Gahan, a 300-pound homosexual, picked defendant up and drove to a location near Roscoe, Illinois, where he and defendant smoked marijuana.  As defendant stood in front of Gahan’s car, Gahan approached him from behind and started to choke him.  Defendant grabbed his nunchucks and struck Gahan on the head with them until Gahan fell to the ground.  Defendant ran a short distance, turned around, and walked back to where Gahan lay.  Defendant told the detectives that, at that point, he thought Gahan was dead.  The detectives did not ask defendant if he checked Gahan’s vital signs, nor did defendant tell them that he did.  Defendant stated that he then drove Gahan’s car to the home of a friend named Brian Carlson, who suggested burning the body.  He and Carlson took a can of gasoline from Carlson’s garage and drove to where the body lay.  After pouring gasoline on it, defendant ignited Gahan’s body.  Defendant admitting taking Gahan’s wallet, which contained $60-70.

Carlson testified that defendant came to his house early in the morning on April 21, 1986.  Defendant, whose pants were stained with blood, explained that he had been in a fight.  Defendant changed into a pair of Carlson’s pants
 and borrowed Carlson’s gas can, which defendant said was for a campfire in Roscoe.  In his van, Carlson followed defendant, who was driving Gahan’s car, to an unknown location.  There, defendant wiped Gahan’s car clean of fingerprints, abandoned the vehicle, and entered Carlson’s car.  Carlson dropped defendant off at some railroad tracks at the "Roscoe trestle area" and observed a large fire soon thereafter.  Early in 1987, defendant called Carlson and asked him not to testify.

The State called Barry Young, who said he was a friend of defendant’s.  Young testified that on April 15, 1986, defendant asked him if he wanted to "go roll queers" with him.  Young laughed off defendant’s suggestion.  Sometime prior to April 22, 1986, defendant asked Young questions about how much gasoline it would take to burn a body.  On April 22, 1986, Young saw defendant and asked about a newspaper report of a man being burned to death.  When asked if he was the perpetrator, defendant "denied it *** and laughed at it."

Dr. Larry Blum, a forensic pathologist, also testified for the State.  Dr. Blum performed an autopsy on April 22, 1986, and found several lacerations on Gahan’s skull resulting from blunt force trauma.  He also found "small pinpoint hemorrages [
sic
]" in Gahan’s trachea, caused when Gahan inhaled hot gasses from the fire.  Dr. Blum thus believed that Gahan was alive when defendant set him on fire.  According to Dr. Blum, although the blows to Gahan’s head could have caused a concussion, they were not severe enough to have caused Gahan’s death.  Rather, in Dr. Blum’s opinion, the burning caused Gahan’s death.  Dr. Blum opined that the intense heat from the fire caused neurologic shock, which in turn caused Gahan’s bodily functions to shut down.

Defendant called several witnesses in support of his theory, which was twofold: first, he claimed to have struck Gahan with the nunchucks in self-defense, and second, he claimed to have burned Gahan’s body under the belief that Gahan was dead.  Brian Carlson’s wife, Robin, testified that she noticed discolored markings on defendant’s neck between April 22 and April 24, 1986.

Defendant also testified.  His version of events closely resembled the one that he told to the detectives in 1987, except that he added the following details.  He stated that he carried the nunchucks with him for protection and that he hit Gahan only in self-defense after Gahan grabbed defendant’s crotch and neck.  After initially running away and returning to where Gahan lay, defendant observed no breathing or movement of any kind.  He testified that he checked Gahan’s vital signs by placing his hand over Gahan’s mouth and by checking Gahan’s pulse.  As Gahan showed no signs of life, defendant concluded he was dead.  Defendant then dragged Gahan’s body into the passenger seat of Gahan’s car and drove toward Carlson’s house.  Planning to place the body in the trunk of the car, he stopped at the Roscoe trestle area but was unable to lift the body into the trunk.  Defendant therefore left Gahan’s body next to the railroad tracks and drove to Carlson’s house.  Although defendant wanted to bury the body, Carlson suggested burning it.  Carlson retrieved a gas can from his garage, and the two eventually proceeded to the Roscoe trestle area in Carlson’s van.  Defendant exited Carlson’s van, walked to Gahan’s body, and took Gahan’s wallet.  He then doused and burned the body.  After that, defendant was unable to find Carlson, who was supposed to have been waiting for defendant at the trestle.

Defendant left Rockford in July 1986 and headed south.  He went to several states, including Florida, Texas, and Arizona, until he was arrested in New Mexico following a high-speed chase. Regarding the statement he gave to the detectives in 1987, defendant claimed that the detectives specifically asked him if he had checked Gahan’s vital signs and that he had answered yes.  Defendant also claimed to have no prejudice toward homosexuals.  On cross-examination, defendant stated that each time he struck Gahan with the nunchucks he intended only to inflict "plain bodily harm" on the victim.

The State called Detective Costello and Lance Waters in rebuttal.  Detective Costello denied ever asking defendant if he checked Gahan’s vital signs.  Waters, a friend of defendant’s, stated that defendant called him on April 21, 1986, and asked to meet with him.  Defendant told Waters about many of the facts surrounding Gahan’s death.  For instance, defendant told Waters that he killed Gahan in self-defense and that he burned the body believing Gahan to be dead.  However, defendant never said that he checked to see if Gahan was breathing.

The jury deliberated for approximately five hours before finding defendant guilty of murder.  The trial court denied all of defendant’s posttrial motions and sentenced him to a 40-year term of imprisonment.  Defendant’s motion to reconsider sentence was denied, and this timely appeal followed.

II.  ANALYSIS

A.  WHETHER THE STATE PROVED DEFENDANT GUILTY

BEYOND A REASONABLE DOUBT

We now turn to defendant’s contention that the State failed to prove him guilty of murder beyond a reasonable doubt.  Defendant maintains first that the State introduced insufficient evidence that he acted with knowledge that his acts of beating Gahan created a strong probability of death.  He also claims that the evidence was insufficient to support a finding that the beating caused Gahan’s death.  Defendant stresses (a) his own testimony in which he specifically stated
 that he did not know hitting someone on the head with nunchucks could cause a scalp laceration, break open the skin, or create a strong probability of death and (b) Dr. Blum’s testimony that Gahan did not die from the beating.  Citing 
People v. Bavas
, 251 Ill. App. 3d 720, 724 (1993), and 
People v. Jordan
, 4 Ill. 2d 155, 163 (1954), defendant contends that those statements went uncontradicted and therefore could not be disregarded by the jury.

Defendant further contends that the evidence clearly showed that he thought Gahan was dead after the beating.  According to defendant, he therefore could not have known that burning the body created a strong probability of Gahan’s death.  Finally, defendant maintains that the State failed to prove that Gahan died as a result of the burning.

A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant’s guilt.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  
The relevant inquiry here is whether, after reviewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved beyond a reasonable doubt the elements of first-degree murder.  See
 
Collins
, 106 Ill. 2d at 261.

Our supreme court stated in 
People v. Howery
, 178 Ill. 2d 1, 42-43 (1997): 

"In order to prove murder, it is not necessary to show that the defendant had a specific intent to kill or do great bodily harm or that he knows with certainty that his acts will achieve murderous results.  [Citations.]  The requisite mental state for murder under section 9--1(a)(2) may be inferred from the facts and circumstances of the evidence.  [Citations.]  It is sufficient to show that the defendant voluntarily and willfully committed an act, the natural tendency of which was to destroy another’s life.  [Citations.]  A defendant’s intent may be implied from the character of the act.  [Citation.]"

Whether the defendant is guilty of murder because his acts  created a strong probability of death is a question for the trier of fact.  
Howery
, 178 Ill. 2d at 43
; 
People v. Bartall
, 98 Ill. 2d 294, 307 (1983).  The cause of death is also a question for the trier of fact.  
People v. Krueger
, 260 Ill. App. 3d 841, 847 
(1994).  As long as the defendant’s acts contributed to the death of the victim, the defendant may be found guilty of murder.  
People v. Brackett
, 117 Ill. 2d 170, 176 (1987).

After reviewing all of the evidence, we conclude that the State met its burden and proved defendant guilty of murder beyond a reasonable doubt.  Much of defendant’s argument hinges on a reading of count III that would interpret the "beating" and "burning" as separate, unrelated acts.  We, however, do not read count III that way.  Count III stated that defendant, without lawful justification[,] beat 
and
 burned Robert P. Gahan, knowing that such acts created a strong probability of death to Robert P. Gahan, thereby causing the death of Robert P. Gahan, in violation of [Ill. Rev. Stat. 1987, ch. 38, par. 9--1(a)(2)]."  (Emphasis added.)  We agree with the State that the indictment considered the "beating" and "burning" as conjoined, rather than separate acts.  Thus, even if Gahan did not die as a result of the beating, the beating would still have been a significant factor contributing to Gahan’s death in that it (at the very least) rendered Gahan unconscious and unable to defend himself.  Furthermore, based upon our view of the indictment, if the jury rejected the self-defense argument, defendant would be guilty of murder, and the mistake-of- fact issue would become moot.

The mental state of knowledge is ordinarily proved by circumstantial evidence rather than by direct proof.  
People v. Price
, 225 Ill. App. 3d 1032, 1036 (1992)
.  Here, the State presented sufficient evidence that defendant knowingly engaged in acts that created a strong probability of Gahan’s death.  First, the jury could have determined defendant’s mental state from hearing about the acts of beating and burning themselves.  See 
Howery
, 178 Ill. 2d at 43.  Defendant admitted striking Gahan on the head with nunchucks approximately four times.  Although nunchucks are not 
per
 
se
 deadly weapons, they may be used in such a manner that they become deadly weapons.  
People v. Olsen
, 161 Ill. App. 3d 945, 949
 (1987)
.  Whether the instant defendant used the nunchucks as deadly weapons was a question of fact for the jury to determine.  See 
Olsen
, 161 Ill. App. 3d at 949.  If the jury concluded that defendant’s use of the nunchucks created a strong probability of Gahan’s death, it was within its discretion to so find.

Second, the testimony of Young, who said he was defendant’s friend, was probative of defendant’s mental state.  Less than one week before Gahan’s death, defendant asked Young if he wanted to "go roll queers."  At some point prior to April 22, 1986, defendant asked Young how much gasoline a person would need to burn a body.  In addition, Young testified that defendant laughed when confronted with the facts about the burning incident.

Third, defendant wiped down Gahan’s car, abandoned it, burned Gahan’s body, and fled the state.  The jury could have interpreted defendant’s conduct as evidence of his mental state and of his consciousness of guilt.  See 
People v. Bounds
, 171 Ill. 2d 1, 49 (1995) (defendant’s attempt to dispose of victim’s body and his subsequent flight from police were evidence of his consciousness of guilt); 
Price
, 225 Ill. App. 3d at 1036.

We therefore hold that there was sufficient evidence from which the jury could have concluded that defendant knowingly engaged in acts that created a strong probability of Gahan’s death.

We reject defendant’s reliance on 
Bavas
 and 
Jordan
.  Those cases stand for the proposition that, where witness testimony is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and where the witness has not been impeached, that testimony cannot be disregarded by a jury.  
Bavas
, 251 Ill. App. 3d at 724; see 
Jordan
, 4 Ill. 2d at 163
.  True, defendant testified that he did not know that hitting someone on the head with nunchucks could cause a scalp laceration, break open the skin, or create a strong probability of death.  However, the jury was free to reject that testimony.  See 
Jordan
, 4 Ill. 2d at 163 (jury may reject defendant’s story if the facts and circumstances contradict defendant’s story, or if the story itself is improbable).  Not only did the State introduce competing, circumstantial evidence of defendant’s mental state, we find unreasonable defendant’s assertion that he did not believe nunchucks could break open the skin or cause a laceration.

The jury was also free to reject defendant’s contention that he thought Gahan was dead after the beating.  Although defendant testified that he checked Gahan’s vital signs, Waters testified that defendant did not tell him that he checked to see if Gahan was breathing.  Furthermore, Detectives Schultz and Costello both testified that defendant did not tell them in January 1987 that he checked Gahan’s vital signs, and the jury was free to find that defendant did not volunteer that information to the detectives during the 1987 interview.  Moreover, Carlson stated that when defendant came to his house early in the morning on April 21, 1986, defendant merely told Carlson that he had been in a fight.  Interestingly, defendant did not tell Carlson that he had just killed someone in self-defense.  Based on these facts, we conclude that the jury, in its discretion, could reject defendant’s contention that he believed Gahan was dead.

Defendant also maintains that the State failed to prove that Gahan was alive when defendant burned his body.  He asserts that the State failed to prove that, between the time of the beating and the burning, Gahan did not die from heart failure, from a concussion, or from defendant’s own mishandling of Gahan’s body.  Defendant also attempts to discredit the testimony of Dr. Blum by pointing out several alleged weaknesses in Dr. Blum’s testimony.  For example, on cross-examination Dr. Blum stated that, partly because he had failed to find a competing cause, the burning caused Gahan’s death.  Dr. Blum also stated that he could not positively rule out heart failure as a cause of death.  (Parenthetically, we note that here defendant attacks Dr. Blum’s credibility, whereas  in other parts of his argument defendant relies heavily on Dr. Blum’s testimony.)

We find no merit in defendant’s argument, which essentially goes to the weight of Dr. Blum’s testimony rather than to the sufficiency of the evidence.  The cause of Gahan’s death was a factual issue for the jury to determine.  See 
Krueger
, 260 Ill. App. 3d at 847.
  Dr. Blum, a forensic pathologist, opined that Gahan was alive when his body was burned and that the fire caused his death.  Dr. Blum relied on the findings he made from Gahan’s autopsy.  If the jury concluded that Gahan was alive immediately before defendant burned him, there was sufficient evidence before the jury to support that conclusion.

B.  WHETHER THE STATE SHOULD HAVE BEEN BARRED FROM ARGUING

THAT DEFENDANT DID NOT BELIEVE GAHAN WAS DEAD

Next, defendant asserts that the State should have been barred from presenting evidence that defendant did not believe that Gahan was dead before burning the body.  Judge David Smith presided over the first trial in 1987.  At the sentencing hearing, he stated, "[I]t is possible and probably true that the defendant believed that Mr. Gahan was dead when he attempted to burn the body."  Defendant contends that Judge Smith’s statement "was tantamount to a determination that the evidence was insufficient to warrant a conviction on the theory of murder by burning."  Defendant also contends that during the first trial the State presented evidence that defendant believed Gahan was dead and that there was no contradictory evidence on the matter; therefore, according to defendant, the jury was required to accept that evidence as fact.  See 
Jordan
, 4 Ill. 2d at 163; 
Bavas
, 251 Ill. App. 3d at 724
.  Finally, defendant cites 
Crane II
, in which we stated, "Defendant’s mistaken belief [that Gahan was dead] would negate the requisite 
mens
 
rea
 for murder."  
Crane II
, slip op. at 10
.  According to defendant, these statements and facts, taken together, prohibited the State from challenging his mistake-of-fact assertion.

We are unpersuaded by defendant’s argument.  First, the 1987 trial was a jury trial, and Judge Smith was not the trier of fact.  He made his remarks during the sentencing hearing.  Judge Smith’s remarks therefore did not amount to an acquittal or a judicial determination, and they do not raise double jeopardy concerns.  Second, based on the testimony of Carlson, Waters, and the detectives, we have already rejected the argument that the jury was bound to accept defendant’s claim that he believed Gahan was dead.  Finally, since the jury was free to accept or reject defendant’s mistake-of-fact argument, the quoted language from 
Crane II
 has no application to the instant argument.

C.  WHETHER DOUBLE JEOPARDY BARRED THE STATE FROM

PURSUING A "DEATH-BY-BURNING" THEORY

Next, defendant claims that double jeopardy barred the State from pursuing a "death-by-burning" theory.  Double jeopardy prevents a person from being twice put in jeopardy for the same offense.  U.S. Const., amend. V; Ill. Const. 1970, art. I, §10.  Normally, jeopardy attaches when, in a jury trial, the jury is selected and then sworn.  
People v. Yarbrough
, 179 Ill. App. 3d 198, 201 (1989).  Where the defendant is acquitted of an offense, the bar of double jeopardy descends, and the State becomes barred from reprosecuting the defendant for the same offense.  
People v. Fisher
, 259 Ill. App. 3d 445, 451 (1994).

Defendant contends that the jury verdict from the second trial operated as an "implied acquittal" of a death-by-burning theory.  The indictment governing the second trial contained four counts, all alleging that defendant "beat and burned" Gahan: count I alleged that defendant intended to kill Gahan; count II alleged that defendant intended to do great bodily harm to Gahan; count III alleged that defendant knew his acts created a strong probability of causing Gahan’s death; and count IV alleged that defendant knew his acts created a strong probability of great bodily harm to Gahan.  The jury was given six verdict forms: one form for each of the four counts, one involuntary manslaughter form, and one not- guilty form. The jury signed and returned only one form, finding defendant guilty under count III (strong probability of death).

Defendant posits that a jury could have interpreted his burning Gahan’s body in only one of two ways: either as an act committed with a specific intent to kill or as an act committed under the belief that Gahan was dead.  Thus, according to defendant, since it did not return the verdict forms for count I (intent to kill) or for count II (intent to do great bodily harm), the jury acquitted him of murder by burning and convicted him only of murder by beating.  Defendant contends that, due to  the jury’s return of the verdict form for count III only, the State was barred from pursuing a murder-by-burning theory at the third trial.

Again, we are unpersuaded by defendant’s argument.  First, defendant incorrectly assumes that the indictment stated alternative theories of murder.  It did not.  As we already discussed, the "beating" and "burning" were conjoined acts such that if defendant possessed the requisite 
mens
 
rea
 at any time prior to or during the beating and burning, and if the beating and burning proximately caused Gahan’s death, then defendant was guilty of murder.  Second, defendant overlooks the fact that, prior to the third trial, the State voluntarily dismissed with prejudice counts I, II, and IV.  As a result, defendant was not subject to the possibility of being convicted under those counts, and therefore no threat of double jeopardy existed.

Defendant also contends that he should have been afforded an evidentiary hearing to determine whether the jury unanimously acquitted defendant of counts I and II.  Defendant presented the trial court with an affidavit, signed by Thelma Allsen (a juror during the second trial), stating that the jury unanimously found defendant not guilty as charged in count I.  He also presented an affidavit, signed by John Truitt (defendant’s standby trial counsel during the second trial), stating that another juror told Truitt that the jury unanimously acquitted defendant as to counts I and II.  The trial court refused to consider the affidavits and also denied defendant’s request for an evidentiary hearing.

We agree with the trial court’s rulings.  It has always been held that the verdict of jurors cannot be impeached even by their own affidavit or testimony.  
People v. Brinn
, 32 Ill. 2d 232, 239 (1965).

"Neither the defendant nor the court can use the affidavits as a passage into the jury room, the deliberations of the jurors[,] or their several mental attitudes. *** The only manner in which the conclusion of a jury on a verdict may be recognized is by a formal return of its verdict to the court."  
People v. Hall
, 25 Ill. App. 3d 992, 994
 (1975).

Here, defendant attempted to use affidavits to create a not- guilty verdict as to counts I and II.  Alternatively, he requested an opportunity to present juror testimony on the matter.  However, since the jury did not return a formal verdict as to either count, defendant cannot create a verdict by presenting the affidavits and testimony of jurors.  See 
Hall
, 25 Ill. App. 3d at 994.

D.  WHETHER REMARKS MADE BY THE PROSECUTOR WERE REVERSIBLE ERROR

Next, defendant contends that the prosecutor made four improper remarks during closing argument that deprived him of his right to a fair trial.  Although defendant did not object to any of the four statements, we will review this issue pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)).

It is well established that a prosecutor is afforded wide latitude in closing argument and may argue to the jury facts and reasonable inferences drawn from the evidence.  
People v. Kliner
, 185 Ill. 2d 81, 151 (1998).  A reviewing court will find reversible error based on improper prosecutorial comments only where those remarks are "clearly prejudicial."  
People v. Macri
, 185 Ill. 2d 1, 48-49 (1998).  In determining whether the remarks were prejudicial, we must take into consideration the content of the language used, its relation to the evidence, and its effect on the rights of the accused to a fair and impartial trial.  
Macri
, 185 Ill. 2d at 49.  Prosecutorial remarks are acceptable if invited by the defendant.  
People v. Thomas
, 172 Ill. App. 3d 172, 179 (1988).

The first alleged improper comment was made when the prosecutor was reviewing Dr. Blum’s testimony.  The prosecutor said: "Doctor Blum gets $150 an hour, and [that fact] was brought out.  He needs a raise after subjecting himself to that abuse from this defendant."  Defendant contends that his cross-examination of Dr. Blum was very damaging to the State’s case and that it in no way amounted to "abuse."  However, we find that the prosecutor’s remark was a fair and accurate categorization of defendant’s cross-

examination of Dr. Blum, invited by defendant.  The trial judge struck comments that he considered argumentative, and defendant misstated some of Dr. Blum’s findings.  We therefore assign no error to this remark.

Defendant’s second complaint is that the prosecutor made comments not based on the evidence.  While still reviewing Dr. Blum’s testimony, the prosecutor stated, "It doesn’t take a rocket scientist to tell you [Gahan] died from fire.  He was healthy one minute."  According to defendant, since there was no evidence that Gahan was "healthy" prior to being burned, the prosecutor improperly presented his own testimony.  We disagree.  We read this passage in context as a statement that Gahan was "alive" prior to being burned.  As the record supports such a reading, we attribute no error to the prosecutor’s use of the word "healthy."  In any event, we do not believe defendant was prejudiced in any way by this statement.

The third complained-of comment was made as the prosecutor attacked defendant’s credibility.  The prosecutor stated: 

"Make no mistake about it.  You either believe this defendant, you believe this individual convicted of burglary just two years before he burned Mr. Gahan alive, either you believe everything he tells you or he is guilty of murder. *** [Defendant’s] problem is in order to believe him you have to disbelieve everyone else in the case, including Lance Waters, his friend."

Maintaining that these comments constituted reversible error, defendant cites
 
People v. Wilson
, 199 Ill. App. 3d 792, 797 (1990), and 
People v. Ferguson
, 172 Ill. App. 3d 1, 13 (1988)
.  In each of those cases, the prosecutor argued that in order to acquit the defendant, the jury would have to conclude that all of the State’s witnesses were lying.  Both courts held that this type of argument constituted reversible error, entitling the defendants to a new trial.  
Wilson
, 199 Ill. App. 3d at 797; 
Ferguson
, 172 Ill. App. 3d at 13-14.

Where the testimony of the defendant and State’s witnesses conflict, remarks that the jury may believe the defendant only if it disbelieves certain State witnesses are not improper.  
People v. Pecoraro
, 144 Ill. 2d 1, 16-17 (1991); 
Thomas
, 172 Ill. App. 3d at 179.  Here, the prosecutor’s comments were based on the evidence.  The points of contention at trial were whether defendant acted in self-defense and whether he reasonably believed Gahan to be dead, and both the State and defendant presented evidence on those issues.  In other words, the prosecutor was simply addressing the fact that the evidence on those issues conflicted.  Accordingly, we find no error in the prosecutor’s comments on the evidence and on the inferences arising therefrom.  See 
Thomas
, 172 Ill. App. 3d at 179-80.

The fourth allegedly improper remark occurred when the prosecutor stated as follows:

"But it all boils down to this.  It’s very simple.  In order for this defendant to get a pass on murder, he has to convince you somehow that this man was dead--in spite of all the evidence to the contrary."

Citing 
People v. Weinstein
, 35 Ill. 2d 467, 471 (1966), defendant contends that the prosecutor improperly shifted the burden of proof to the defense.

Although we do not condone the type of argument employed by the prosecutor, we do not believe that it constituted an error of such magnitude so as to deprive defendant of a fair trial.  We agree with 
Crane II
 that "the evidence of defendant’s guilt is overwhelming."  
Crane II
, slip op. at 13
.  Furthermore, the jury was instructed, orally and in writing, that closing arguments are not evidence, that any argument not based upon evidence should be disregarded, and that the State shoulders the burden of proving its case beyond a reasonable doubt.  See 
Thomas
, 172 Ill. App. 3d at 179 (jury instructions may cure improper prosecutorial remarks).  We believe that, had the prosecutor not made his burden-shifting argument, the result of the proceeding would have been the same.  Accordingly, we hold that defendant was not substantially prejudiced by this argument.

We have concluded that only one of the prosecutor’s alleged improper remarks (the burden-shifting argument) was improper.  However, since that argument was not so egregious as to warrant reversal, we reject defendant’s contention that the cumulative effect of the prosecutor’s remarks were substantially prejudicial.

E.  WHETHER THE JURY INSTRUCTIONS WERE PROPER

Next, defendant asserts that the jury was improperly instructed.  Defendant’s argument assumes the following three facts: first, that the jury has rejected defendant’s self-defense argument; second, that the jury has concluded that the burning caused Gahan’s death; and third, that the jury has accepted his mistake-of-fact argument.  According to defendant, the instructions given erroneously allowed the jury to convict him of murder by coupling (a) the mental state defendant possessed prior to the beating with (b) burning as the cause of death.  Defendant contends that the fatal burning (under a mistaken belief that Gahan was dead) could be considered a cause connected with the beating 
only
 if he beat Gahan with the intent to kill.  Defendant then cites W. LaFave & A. Scott, 
Handbook on Criminal Law
, 2d ed., at 294-95 (1986), and states as follows: "The explanation has been that where the intent was not to kill, the subsequent disposal of the body could not be viewed as part of one transaction."  Defendant contends that the jury should have been instructed that the State had the burden to prove beyond a reasonable doubt that "defendant’s own subsequent acts of burning were not an intervening cause of death unconnected with the defendant’s initial acts of beating."

We attribute no error to the instructions tendered in this case.  Defendant cites no Illinois case in support of the quoted legal proposition, nor does he present an argument as to why the proposition should be the law in Illinois.  Further, our independent research cannot find a case in support of defendant’s argument.  In fact, the cases we found defeat his argument.  In
 
People v. Rollins
, 295 Ill. App. 3d 412, 418 (1998)
, it was stated:

"If an assailant inflicts unjustified wounds to the extent that he reasonably believes he has killed someone, misapprehension of his crime’s effect does not license incineration, drowning, or dismemberment to destroy evidence of what happened.  If a defendant attempts to conceal his own criminality by further acts that actually contribute to an end defendant mistakenly thinks he has already produced, he cannot escape criminal responsibility for murder."

See also
 
People v. Brackett
, 117 Ill. 2d 170, 176 (1987)
 ("when criminal acts of the defendant have contributed to a person’s death, the defendant may be found guilty of murder").  As we stated earlier, if the jury rejected the self-defense argument, defendant was guilty of murder.  Since defendant’s argument assumes that the beating of Gahan was not "justified conduct" (
Rollins
, 295 Ill. App. 3d at 418), we conclude that the instructions given were proper and that defendant was not entitled to the instruction he proposes.

In a related argument, defendant contends that the jury should have been instructed that it was the State’s burden to prove that defendant beat Gahan with the specific intent to kill.  He cites the same portion of LaFave & Scott’s treatise as above and again presupposes that the jury found burning as the cause of death.  However, based both on 
Rollins
 and on the fact that the proposed instruction is not the law in Illinois, we similarly reject this argument.

III.  CONCLUSION

For the foregoing reasons, defendant’s conviction in the circuit court of Winnebago County is affirmed.

Affirmed.

GEIGER and THOMAS, JJ., concur.