2020 IL App (2d) 180776-U
No. 2-18-0776
Order filed September 28, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09-CF-1023 |
| GUSTAVO TORRES-MEDEL, | ) ) | Honorable Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Hudson and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant convicted of intentional murder of his infant son did not meet cause-and-prejudice test for filing a successive postconviction petition; there was no reasonable probability that the result at trial would have been different based on evidence that CPR was performed on the child; the doctor who performed the child's autopsy testified that even faulty CPR would have been unlikely to cause the child's rib fractures; also, faulty CPR would not have accounted for the extensive brain hemorrhaging that contributed to the child's death.

¶ 2    At issue in this appeal is whether the trial court erred in denying defendant, Gustavo Torres-

Medel's, *pro se* motion for leave to file a successive postconviction petition. Because defendant

failed to satisfy the cause-and-prejudice test, the denial of the motion was not error. Accordingly, we affirm.

¶ 3                                     I. BACKGROUND

¶ 4      In April 2008, defendant's infant son died, and defendant was charged with five counts of first-degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2008)). At his bench trial, the evidence established that defendant's son was in perfect health when the baby's mother left for work and put defendant in charge. Several hours later, the baby was dead. When he was asked what had happened to his son, defendant expressed remorse to several people for what he had done, and he specifically admitted to a friend that he had struck his son when the baby would not stop crying. Defendant also told his friend that the baby was dead. Many people who arrived at the scene and testified about the baby's condition indicated that the baby was cold, pale, nonresponsive, and bruised.

¶ 5      The doctor who performed an autopsy on the baby testified that there were bite marks on the baby's buttocks and multiple bruises on the baby's face and chest. The baby also suffered rib fractures and extensive subarachnoid hemorrhaging to his brain. According to the doctor, none of the injuries the baby sustained were incurred postmortem. The doctor concluded that the cause of the baby's death was abusive traumatic injury to the brain and chest, which resulted from the baby being beaten and crushed. When asked if the baby's injuries could have resulted from the baby falling or from CPR being performed on the baby incorrectly, the doctor opined that such scenarios were extremely unlikely.

¶ 6      The trial court found defendant guilty of all five counts of first-degree murder; merged all of the counts into the first count, which alleged that defendant acted with the intent to kill his son; and sentenced defendant to 45 years' imprisonment.

¶ 7    Defendant timely appealed, arguing, among other things, that the State failed to prove beyond a reasonable doubt that he acted with the intent to kill his son. This court disagreed and affirmed defendant's conviction and sentence. *People v. Torres-Medel*, 2012 IL App (2d) 110701-U.

¶ 8    Thereafter, defendant petitioned *pro se* for postconviction relief. One of the issues raised was whether trial counsel was ineffective for failing to call an unnamed expert witness who could have testified that the baby's ribs were broken during several failed attempts at CPR. The trial court summarily dismissed the petition, noting that, even if improperly administered CPR caused the rib fractures, such action did not explain the bruising to the baby's face and buttocks or the subarachnoid brain hemorrhage. Defendant appealed, counsel was appointed to represent defendant on appeal, and appointed counsel later moved to withdraw (*Pennsylvania v. Finley*, 481 U.S. 551 (1987)). In his motion, counsel asserted, among other things, that none of the issues defendant raised in his petition had arguable merit. We agreed and granted counsel's motion to withdraw. *People v. Torres-Medel*, 2014 IL App (2d) 131148-U.

¶ 9    Approximately five years later, defendant filed a *pro se* motion for leave to file a successive postconviction petition, which he attached to the motion. Accompanying the motion and petition were various reports from detectives detailing the investigation in the case; a report prepared by the Du Page County coroner; and articles addressing CPR, complications that can arise while performing CPR, and rigor mortis and lividity. Although the investigative reports suggested that the baby had died long before the authorities arrived, the reports, including the report prepared by the Du Page County coroner, named the people who gave the baby CPR at the scene and noted that some witnesses did not see any apparent signs of injury to the baby. Defendant claimed that these materials supported his contention that he did not act with the intent to kill his son, as they

suggested that some of his son's injuries could have resulted when the baby was given CPR. Defendant argued that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose these investigative reports and that his trial counsel was ineffective for failing to obtain these reports and use them to uncover exculpatory evidence.

¶ 10    Defendant also asserted that he had cause for not pursuing his claims earlier, as he did not know about the investigative reports before he filed a Freedom of Information Act (FOIA) request; the prison library was frequently on lockdown, and thus, he did not have access to legal materials he needed to prepare his petition; and there were no Spanish-speaking translators at the library who could help him navigate the postconviction process. Further supporting his contention was an affidavit from his cellmate, Robert Aldope, who helped defendant prepare his successive petition. Aldope confirmed that defendant does not speak English well and that the prison does not provide translators to assist Spanish-speaking prisoners in preparing postconviction petitions. Aldope also asserted that defendant did not ask his previous cellmates for help because they were gang members, and defendant feared that they would harm him if they discovered that defendant was convicted of killing his infant son.

¶ 11    Defendant argued that he was prejudiced because counsel could have used the reports to interview and call witnesses who could have supported defendant's claim that he did not act with the intent to kill his son. Defendant also asserted that such information could have been used to impeach witnesses who denied performing CPR on the baby.

¶ 12    The trial court denied defendant leave to file a successive postconviction petition, because defendant failed to establish cause, prejudice, or a fundamental miscarriage of justice. As to prejudice, the trial court determined that the allegedly new evidence would not change the result on retrial.

¶ 13    This timely appeal followed.

¶ 14                              II. ANALYSIS

¶ 15    At issue in this appeal is whether the denial of defendant's *pro se* motion for leave to file a successive postconviction petition was proper. We review that issue *de novo*. *People v. Edgeston*, 396 Ill. App. 3d 514, 518 (2009).

¶ 16    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) allows a defendant to file only one petition without leave of court. 725 ILCS 5/122-1(f) (West 2018); *People v. Sanders*, 2016 IL 118123, ¶ 24. Generally, to obtain leave to file a successive petition, the defendant must satisfy the cause-and-prejudice test. 725 ILCS 5/122-1(f) (West 2018); *Sanders*, 2016 IL 11123, ¶ 24. Defendant argues that he should be allowed to file a successive petition because he has satisfied this test.

¶ 17    Pursuant to the cause-and-prejudice test, " 'cause' " is defined as "any objective factor, external to the defense, which impeded the [defendant's] ability to raise a specific claim in the initial post-conviction proceeding." *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002); 725 ILCS 5/122-1(f)(1) (West 2018). "Prejudice" is defined as an error so infectious to the proceedings that the resulting conviction violates due process. *Pitsonbarger*, 205 Ill. 2d at 464; 725 ILCS 5/122-1(f)(2) (West 2018). Although only a *prima facie* showing of cause and prejudice needs to be established (*People v. Bailey*, 2017 IL 121450, ¶ 24), a defendant must establish *both* cause and prejudice as to each individual claim asserted in his proposed successive postconviction petition (*Pitsonbarger*, 205 Ill. 2d at 463; 725 ILCS 5/122-1(f) (West 2018)).

¶ 18    Defendant argues that he should be allowed to file a successive postconviction petition because (1) the State committed a *Brady* violation when it did not turn over the investigative reports and (2) his trial counsel was ineffective for failing to investigate and present evidence that

people at the scene may have improperly performed CPR on the baby and thus caused the baby's rib injuries. Defendant contends that such evidence would have supported his claim that he did not act with the intent to kill his son. Defendant claims that, had such evidence been presented, he would have been convicted of involuntary manslaughter, which requires proof that a defendant, who did not intend to kill the victim, acted recklessly and caused death or great bodily harm to the victim. 720 ILCS 5/9-3(a) (West 2018).

¶ 19    Under *Brady*, the State must disclose evidence favorable to the accused and " 'material either to guilt or to punishment.' " *People v. Harris*, 206 Ill. 2d 293, 311 (2002) (quoting *Brady*, 373 U.S. at 87). To establish a *Brady* violation, the defendant must show that (1) the evidence that the State failed to disclose is favorable to the defendant because it was either exculpatory or impeaching, (2) the State willfully or inadvertently suppressed this evidence, and (3) the defendant was prejudiced because the evidence is material to the determination of guilt. *People v. Beaman*, 229 Ill. 2d 56, 73-74 (2008). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Harris*, 206 Ill. 2d at 311. This materiality test is not a test of the sufficiency of the evidence. *Id.* Instead, the defendant must show that " 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *People v. Coleman*, 183 Ill. 2d 366, 393 (1998) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

¶ 20    Ineffective assistance of counsel claims are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Rogers*, 197 Ill. 2d 216, 223 (2001). Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced the defendant. *Strickland*, 466 U.S. at 687. To demonstrate deficient performance, a defendant must establish that counsel's performance fell

below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 162-63 (2001). To show substantial prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a case can be disposed of on the ground of lack of sufficient prejudice, the court need not consider the quality of the attorney's performance. *Id.* at 697.

¶ 21    Here, even assuming that defendant can establish cause, which we find doubtful given that defendant raised the issue he raises now in his initial postconviction petition and could have made a FOIA request then (see *People v. Jellis*, 2016 IL App (3d) 130779, ¶ 26 (the defendant could not establish cause because "[he] had the ability to make a FOIA request at the time of his first postconviction petition but failed to do so"), he most certainly cannot establish prejudice. Evidence presented at trial established that the baby had no injuries at all when he was placed in defendant's care. Several hours later, after being in defendant's care only, witnesses indicated that the baby was lifeless, a conclusion that authorities who arrived on the scene confirmed.

¶ 22    According to the investigative reports, some people on the scene performed CPR on the baby. However, even if they did, the doctor performing the autopsy concluded that it was extremely unlikely that improperly performed CPR caused the rib fractures. He also opined that the rib fractures were caused when the baby was alive because the fractures were accompanied by internal bleeding indicative of circulation. When the doctor was asked why the baby died, he testified that the baby died because he had been crushed or beaten, not that his death was the result of any life-saving treatment he had been given.

¶ 23    Moreover, even if improperly performed CPR caused the rib injuries, it would not impact defendant's responsibility for the brain injury that was a significant cause of the baby's death. See *People v. Crane*, 308 Ill. App. 3d 675, 681-82 (1999) (court rejected defendant's claim that something other than beating caused the victim's death, because "[a]s long as the defendant's acts contributed to the death of the victim, the defendant may be found guilty of murder"). Given the severity of the brain injury, in addition to the multiple bruises and bite marks found on the baby and the fact that defendant admitted harming his son when his son would not stop crying, we fail to see how evidence that the baby's rib injuries may have been caused by improperly performed CPR would alter any finding that defendant acted with the intent to kill his son.

¶ 24    Because that finding would not change, defendant cannot establish either prejudice for purposes of his ineffective assistance of counsel claim or materiality under *Brady*. See *Harris*, 206 Ill. 2d at 311 (materiality under *Brady* identical to prejudice under *Strickland*). That is fatal to defendant's motion for leave to file a successive postconviction petition, as defendant cannot satisfy the cause-and-prejudice test. *Pitsonbarger*, 205 Ill. 2d at 463. Because he cannot satisfy the cause-and-prejudice test, his motion for leave to file a successive postconviction petition was properly denied. *Sanders*, 2016 IL 118123, ¶ 24.

¶ 25    In reaching this conclusion, we comment on the fact that evidence that the baby's rib injuries resulted from improperly performed CPR would not aid defendant in any way in establishing involuntary manslaughter.

¶ 26    As relevant here, a defendant commits first-degree murder when he kills an individual without lawful justification, and he intends to kill that individual. 720 ILCS 5/9-1(a)(1) (West 2008). A defendant "intends, or acts intentionally or with intent, to accomplish a result or engage

in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." 720 ILCS 5/4-4 (West 2008).

¶ 27    In contrast, "[a] person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly." 720 ILCS 5/9-3(a) (West 2008). A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that his acts are likely to cause death or great bodily harm to another. *People v. Castillo*, 188 Ill. 2d 536, 540-41 (1999).

¶ 28    As can be seen, "[t]he difference between involuntary manslaughter and first-degree murder lies in the mental state that accompanies the conduct resulting in the victim's death." *People v. Robinson*, 232 Ill. 2d 98, 105 (2008). "First degree murder may be committed either intentionally or knowingly, whereas involuntary manslaughter is committed unintentionally but recklessly." *People v. Maggio*, 2017 IL App (4th) 150287, ¶ 37.

¶ 29    Here, none of the evidence would suggest that defendant acted recklessly. *People v. Ward*, 101 Ill. 2d 443, 447-48, 451 (1984) (given extensive bruising to four-year-old victim, compression of lungs, and despite the defendant's statement that he did not mean to harm the child, court concluded that "[t]here was no evidence what[so]ever that the defendant acted recklessly"). Rather, the severity of the injuries to the baby, irrespective of the rib fractures, coupled with defendant's expression of remorse, admission that he struck the baby when the baby would not stop crying, and declaration that his son was dead were sufficient to establish that defendant acted with the intent to kill his son. See *id.*

¶ 30    Defendant seems to suggest that, here, the ultimate cause of his son's death is paramount in determining whether defendant could be guilty of first-degree murder or involuntary

manslaughter. It is not. What is paramount is whether defendant acted recklessly or intentionally in causing the baby's death. The circumstances of this case overwhelmingly reveal that defendant acted with the intent to kill his son. See *id.*

¶ 31                                    III. CONCLUSION

¶ 32     For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 33     Affirmed.