THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LAWRENCE D. OLSEN, Defendant-Appellant.

Second District   No. 2—86—0250

Opinion filed October 2, 1987.

G. Joseph Weller, Kathleen J. Hamill, and Francine Harrison, all of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of Elgin, and Robert J. Biderman and Rebecca L. White, both of State's Attorneys Appellate Prosecutor's Office, of Springfield, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Lawrence D. Olsen, was convicted of two counts of aggravated criminal sexual assault, two counts of aggravated battery, and one count of armed violence arising from an incident on August 16, 1985. Concurrent extended terms of imprisonment of 50 years were imposed for each aggravated sexual assault conviction, 10 years for each aggravated battery conviction, and 14 years for the armed violence conviction. Defendant appeals, contending that: (1) the criminal sexual assault statutes (Ill. Rev. Stat. 1985, ch. 38, pars. 12—12 through 12—18) are unconstitutionally overbroad and vague; (2) the trial court erred in allowing a State's witness to demonstrate the martial arts technique for using numchucks; (3) only one of defendant's multiple convictions can stand as they all arise from the same physical act; (4) the trial court erred in imposing extended-term sentences on both the convictions for aggravated battery and for armed violence; and (5) the 50-year extended-term sentence imposed for aggravated criminal sexual assault is excessive.

At trial, police officer Michael Behan testified that at 1:30 a.m. on August 16, 1985, he was called to the scene of a reported battery in Fox Lake, Illinois, where he found Valerie Brey lying on the floor of her apartment, unclothed and covered with blood. Behan and another officer arrested the defendant at his home one block away shortly thereafter, and, in a search of defendant's residence, the police recovered blood-stained blue jeans and underwear, and two pairs of numchucks, one of which had blood on it.

Dr. Frank Micek, the emergency room physician, testified that he

treated the victim at the hospital, at which time she was semiconscious. Dr. Micek diagnosed her as having severe head and facial trauma, including a blow-out fracture of the right eye. He concluded that she had been severely beaten with a blunt object and surgery was performed to close the lacerations on the victim's scalp and forehead. A vaginal examination was performed, and mucous, blood and hair samples were taken.

Valerie Brey testified that she was divorced and lived in the apartment with her two sons. On the night in question her boyfriend, Dennis McGarry, came over and she fixed him supper, after which they drank beer and watched television. At about 11:05 p.m. Ruth Bray, the children's baby-sitter, arrived accompanied by the defendant. McGarry drove Ruth home, leaving the defendant alone with Valerie. When he returned 10 to 15 minutes later, the three drank beer and talked for another 45 to 60 minutes. When the defendant said that he wanted to talk to Valerie about Ruth, McGarry and Valerie quarreled, and McGarry left.

Valerie testified that at this point defendant suggested that they have sexual intercourse, to which Valerie responded, "Are you crazy?" Defendant then produced a pair of numchucks and struck eight to nine blows to Valerie's head, hand and shoulders. She testified that she believed defendant would kill her unless she allowed him to do whatever he wanted; she then submitted and defendant dropped the numchucks and had sexual intercourse with her on the floor. When defendant completed the act he asked Valerie to help him find his numchucks. She again asked if he thought she was crazy, whereupon defendant repeatedly kicked the left side of her face. Defendant then left the apartment and Valerie passed out. In testifying, she described the numchucks used by the defendant and identified a pair of numchucks produced in trial as being similar to those she had described.

Ruth Bray, 14 years old, testified that she was defendant's girlfriend and had been with him for approximately two hours on the night in question, during which time the defendant was drinking beer.

Police officer Robert Luerssen identified a pair of numchucks which were recovered from the defendant's bedroom. He testified that on one occasion while on patrol during the summer of 1985, he observed the defendant practicing with a set of numchucks outside his home. Police sergeant Edward Garretson identified a second pair of numchucks recovered from the defendant's basement.

Joe Mendez testified that he performs and teaches the martial arts and possesses a second degree black belt; he stated that he was

familiar with the manner in which numchucks are intended to be used. Over defendant's objection, Mendez was permitted to demonstrate the use of numchucks to the jury.

Defendant testified that he had been at Valerie Bray's apartment on the night in question but did not strike her or have sexual intercourse with her. He acknowledged that he owned two pairs of numchucks and stated that although he practices with them, he does not really know how to use them.

Defendant contends first that the criminal sexual assault statutes (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(a)(1), (a)(2)) are so vague and overbroad as to be violative of due process. We need not consider this issue further as the arguments here offered by defendant were rejected by our supreme court in the recent case of *People v. Haywood* (1987), 118 Ill. 2d 263.

Defendant next contends that the trial court erred in allowing a State's witness to demonstrate the martial arts technique for using numchucks. He argues that there was no evidence of his proficiency in the use of numchucks, or that the victim was struck in the martial arts fashion.

The admissibility of demonstrative evidence is a matter resting within the sound discretion of the trial court, the exercise of which will not be interfered with unless there has been an abuse to the prejudice of the defendant. (*People v. Rose* (1979), 77 Ill. App. 3d 330, 334, 395 N.E.2d 1081; *People v. Navis* (1974), 24 Ill. App. 3d 842, 848, 321 N.E.2d 500.) The purpose of demonstrative evidence is not necessarily to prove an issue in the case, but to aid the trier of fact in interpreting, understanding, and weighing other evidence and testimony. *People v. Fair* (1977), 45 Ill. App. 3d 301, 305, 359 N.E.2d 848.

In the present case, defendant was charged with aggravated criminal sexual assault, while using a dangerous weapon, and aggravated battery, while using a deadly weapon. At trial, the victim testified that the defendant struck her numerous times, in successive blows, with a pair of numchucks. A bloodied pair of numchucks was recovered in a search of the defendant's residence and admitted in evidence. A witness testified that he had observed the defendant practicing with numchucks outside his home, and defendant testified that he owns two pairs of numchucks with which he practices.

Defendant argues that as numchucks are suitably shaped for use as an ordinary bludgeon, and that since the evidence established that the victim was simply bludgeoned, a demonstration of the use of numchucks in the martial arts fashion was irrelevant and prejudicial. In *People v. Tate* (1979), 68 Ill. App. 3d 881, 883, 386 N.E.2d 584, *ap-*

*peal denied* (1979), 75 Ill. 2d 593, the court recognized that numchucks are part of the legitimate sport of karate and are not a bludgeon. Although numchucks are not *per se* deadly weapons, they may be used in such a manner that they become a deadly or dangerous weapon. (*People v. Van* (1985), 136 Ill. App. 3d 382, 384, 483 N.E.2d 666; *People v. Wethington* (1984), 122 Ill. App. 3d 54, 55, 460 N.E.2d 856.) When the character of a weapon is doubtful or the question whether or not it is deadly depends upon the manner of its use, the issue is for the jury to determine from a description of the weapon, from the manner of its use, and the circumstances of the case. *People v. Dwyer* (1927), 324 Ill. 363, 365, 155 N.E. 316.

■ We conclude that the demonstration conducted in the present case was proper. Numchucks are martial arts instruments, and most jurors are not likely to be familiar with their use in this fashion. Numchucks may be deadly or dangerous, depending upon the manner in which they are used, and there was a fact question to be determined by the jury. The demonstration in the present case was relevant to show how numchucks are designed and can be used and how they may have been used in the present case. There was evidence that defendant knew how to use numchucks and that he used them to inflict injuries on his victim. The demonstration was appropriate to aid the jury in determining whether the defendant was guilty of the offenses for which the use of a deadly or dangerous weapon was an element.

As to whether defendant was prejudiced by the courtroom demonstration, the record shows that prior to Mendez' testimony the prosecutor made an offer of proof as to the demonstration to which defense counsel objected, stating, "That doesn't look horrible to me *** I can do the same thing." Counsel also refused to stipulate, on suggestion by the court, that numchucks are martial arts instruments. As a result, the trial court allowed the demonstration and ordered that it be done briefly and without comment by the witness. The actual demonstration took approximately 15 seconds and consisted in the witness manipulating the numchucks on both sides of his legs and around his body. Under the circumstances, we do not consider that defendant was improperly prejudiced by the demonstration.

■ Defendant next contends that his multiple convictions arising from a single act of sexual penetration of the victim by use of force cannot stand because of the one-act-one-crime rule. He asserts that only one of the five convictions, that for one offense of aggravated criminal sexual assault, can properly remain. The State agrees with defendant's analysis under the principles discussed in *People v.*

*Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477; *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, and *People v. Lucien* (1982), 109 Ill. App. 3d 412, 440 N.E.2d 899, *appeal denied* (1982), 92 Ill. 2d 570. We also agree.

Defendant was convicted under count II of the indictment of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(1)), which charged that he committed a criminal sexual assault aggravated by the display of a dangerous weapon. In count III, under which defendant was also convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2)), the aggravating factor charged was causing bodily harm to the victim. The parties correctly agree that both of these convictions, which are predicated upon one act of sexual penetration, cannot stand, and we vacate the conviction and sentence imposed under count II, which may be considered somewhat less serious than the offense as charged under count III.

■ Defendant's convictions and sentences for aggravated battery and armed violence must also be vacated. In count VI defendant was charged with armed violence predicated upon the underlying felonies of aggravated battery charged in counts IV and V. Upon defendant's conviction for armed violence, aggravated battery became a lesser included offense which must be vacated. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477; *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Similarly, defendant's conviction for aggravated criminal sexual assault under count III of the indictment was based upon the same forcible act, *i.e.*, use of the numchucks to inflict bodily harm upon the victim, as was his conviction for armed violence. (*People v. Morman* (1982), 92 Ill. 2d 268, 270, 442 N.E.2d 250; *People v. Hood* (1974), 59 Ill. 2d 315, 319 N.E.2d 802.) As both of these convictions arose from the same physical acts of force, the armed violence conviction, as the less serious of the two offenses, must be vacated. *People v. Morman* (1981), 97 Ill. App. 3d 556, 568, 422 N.E.2d 1065, *aff'd* (1982), 92 Ill. 2d 268, 442 N.E.2d 250; *People v. Crawford* (1980), 90 Ill. App. 3d 888, 889-90, 414 N.E.2d 25.

Defendant has also contended that the extended-term sentences for both aggravated battery and armed violence were improperly imposed. The State agrees that under *People v. Jordan* (1984), 103 Ill. 2d 192, 206, 469 N.E.2d 569, where there are multiple convictions of different class offenses an extended term may be given only for a conviction within the most serious class. Having earlier determined that the convictions for both aggravated battery and armed violence

must be vacated, we need not further consider the issue.

■ Defendant has also contended that the 50-year extended-term sentence imposed for aggravated criminal sexual assault is excessive in light of his background and potential for rehabilitation. He asserts that the term should be reduced by this court or the cause remanded for a new sentencing hearing.

As we cannot determine with any degree of certainty whether or not the four other convictions vacated herein may have influenced the trial judge in imposing sentence for the remaining conviction of aggravated criminal sexual assault, the sentence should be reconsidered in a new hearing. *People v. Mitchell* (1984), 105 Ill. 2d 1, 16, 473 N.E.2d 1270, *cert. denied* (1985), 470 U.S. 1089, 85 L. Ed. 2d 153, 105 S. Ct. 1857; *People v. Bone* (1982), 103 Ill. App. 3d 1066, 1069, 432 N.E.2d 329, *appeal denied* (1982), 91 Ill. 2d 573; *People v. Filker* (1981), 101 Ill. App. 3d 228, 229, 427 N.E.2d 1311.

Accordingly, the judgment of conviction for aggravated criminal sexual assault imposed under count III of the indictment is affirmed, the sentence vacated, and the cause remanded for a new sentencing hearing as to that offense. The convictions and sentences imposed for the offenses charged in counts II, IV, V and VI of the indictment are vacated.

Affirmed in part; vacated in part; remanded.

DUNN and HOPF, JJ., concur.