818 N.E.2d 1261 (2004)
353 Ill. App.3d 513
289 Ill.Dec. 58
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Kenneth L. MARSTON, Defendant-Appellant.
No. 2-03-0490.
Appellate Court of Illinois, Second District.
November 17, 2004.
Rehearing Denied December 16, 2004.
*1262 G. Joseph Weller, Deputy Defender (Court-appointed), Kathleen J. Hamill (Court-appointed), Office of the State Appellate Defender, Elgin, for Kenneth L. Marston.
Meg Gorecki, Kane County State's Attorney, St. Charles, Martin P. Moltz, Deputy Director, State's Attorneys Appellate Prosecutor, Elgin, Gunta Z. Hadac, Grayslake, for the People.
Justice BYRNE delivered the opinion of the court:
A jury found defendant, Kenneth L. Marston, guilty of home invasion (720 ILCS 5/12-11(a)(2) (West 2002)), aggravated battery (720 ILCS 5/12-4(b)(1) (West 2002)), and criminal trespass to a residence (720 ILCS 5/19-4 (West 2002)). The trial court merged the conviction of criminal trespass to a residence with the home invasion conviction. The court imposed concurrent prison terms of seven years for the home invasion and three years for the aggravated battery. On appeal, defendant argues alternatively that we must (1) vacate his aggravated battery conviction pursuant to the one-act, one-crime and lesser-included-offense doctrines or (2) reduce his aggravated battery conviction to simple battery because the pole used in the offense was not a "deadly weapon" under the aggravated battery statute. We affirm.

*1263 FACTS
The evidence presented at trial indicated the following facts. Early in 2001, Kimberly Jessongne Rose and defendant resided together and were attempting to reconcile a "volatile" romantic relationship. In March 2001, Kimberly decided to leave their home and move in with a girlfriend, Diana Fure Malcara. On March 30, 2001, Kimberly and Diana hosted a social gathering in their new apartment. Kimberly invited defendant even though she knew she was scheduled to work until 2 a.m. on the evening of the party. Defendant arrived at the party while Kimberly was at work, and defendant repeatedly asked Diana to call Kimberly to determine when she would return from work. Kimberly arrived home after 2 a.m., and she and defendant argued in the kitchen until Kimberly told defendant to leave. Diana attempted to separate the two, and defendant allegedly struck Diana with his fist. Two of the male partygoers fought with defendant and forcibly ejected him.
Kimberly went to her bedroom, which was on the second floor of the apartment. Defendant climbed onto the roof of a car port that was adjacent to Kimberly's closed bedroom window. Defendant broke the glass with a pole that Kimberly believed to be metal and approximately two to three feet long. Diana estimated that the pole was only 16 inches long, and another witness characterized it as a steel curtain rod or shower rod that had been pinched on one end to sharpen it. Defendant lunged through Kimberly's broken window, went to Diana's bedroom, and attacked one of the men with whom he had fought earlier. William Cook, the complainant, testified that he attempted to stop the fight, but defendant jabbed the side of his torso three times with the pole. A photo admitted into evidence shows that William suffered three large red marks along his rib cage. William kicked defendant down the stairs, and defendant fled to a friend's home, where he photographed his own injuries.
The jury found defendant guilty of home invasion, aggravated battery, and criminal trespass to a residence. The trial court merged the conviction of criminal trespass to a residence with the home invasion conviction. The court imposed concurrent prison terms of seven years for the home invasion and three years for the aggravated battery, and this timely appeal followed.

ANALYSIS
Defendant initially argues that his conviction of aggravated battery must be vacated under one-act, one-crime and lesser-included-offense principles. The State contends that defendant waived the issues by failing to raise them in a posttrial motion, and defendant responds that we should consider his claims under the plain error doctrine.
A defendant's failure to object at trial and to raise the issue in a posttrial motion operates as a waiver of the right to raise the issue as a ground for reversal on review. People v. Harvey, 211 Ill.2d 368, 385, 286 Ill.Dec. 124, 813 N.E.2d 181 (2004). The plain error rule (134 Ill.2d R. 615(a)) provides a "'"narrow and limited exception"'" (People v. Hampton, 149 Ill.2d 71, 100, 171 Ill.Dec. 439, 594 N.E.2d 291 (1992), quoting People v. Szabo, 113 Ill.2d 83, 94, 100 Ill.Dec. 726, 497 N.E.2d 995 (1986), quoting People v. Pastorino, 91 Ill.2d 178, 188, 62 Ill.Dec. 172, 435 N.E.2d 1144 (1982)) and is applied to ameliorate the harshness of strict application of the waiver rule (People v. Godsey, 74 Ill.2d 64, 72, 23 Ill.Dec. 117, 383 N.E.2d 988 (1978)). "The plain error rule allows a reviewing court to consider a trial error not properly preserved when `(1) the evidence in a criminal case is closely balanced or (2) where *1264 the error is so fundamental and of such magnitude that the accused was denied a right to a fair trial.'" Harvey, 211 Ill.2d at 387, 286 Ill.Dec. 124, 813 N.E.2d 181, quoting People v. Byron, 164 Ill.2d 279, 293, 207 Ill.Dec. 453, 647 N.E.2d 946 (1995); see 134 Ill.2d R. 615(a). We address defendant's argument because an alleged one-act, one-crime violation and the potential for a surplus conviction and sentence affect the integrity of the judicial process, thus satisfying the second prong of the plain error rule. See Harvey, 211 Ill.2d at 389, 286 Ill.Dec. 124, 813 N.E.2d 181.
In People v. King, 66 Ill.2d 551, 6 Ill.Dec. 891, 363 N.E.2d 838 (1977), our supreme court held that a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act. Harvey, 211 Ill.2d at 389, 286 Ill.Dec. 124, 813 N.E.2d 181; King, 66 Ill.2d at 566, 6 Ill.Dec. 891, 363 N.E.2d 838. The supreme court reaffirmed and clarified the King rule in People v. Rodriguez, 169 Ill.2d 183, 214 Ill.Dec. 451, 661 N.E.2d 305 (1996), noting that there are two steps to a King analysis. Harvey, 211 Ill.2d at 389, 286 Ill.Dec. 124, 813 N.E.2d 181; Rodriguez, 169 Ill.2d at 186, 214 Ill.Dec. 451, 661 N.E.2d 305.
First, a court ascertains whether the defendant's conduct consisted of a single physical act or separate acts. Harvey, 211 Ill.2d at 389, 286 Ill.Dec. 124, 813 N.E.2d 181; Rodriguez, 169 Ill.2d at 186, 214 Ill.Dec. 451, 661 N.E.2d 305. "`Multiple convictions are improper if they are based on precisely the same physical act.'" Harvey, 211 Ill.2d at 389, 286 Ill.Dec. 124, 813 N.E.2d 181, quoting Rodriguez, 169 Ill.2d at 186, 214 Ill.Dec. 451, 661 N.E.2d 305. "The definition of an `act' under the King doctrine remains simply what [the supreme court] stated in King: `any overt or outward manifestation which will support a different offense.'" Rodriguez, 169 Ill.2d at 188, 214 Ill.Dec. 451, 661 N.E.2d 305, quoting King, 66 Ill.2d at 566, 6 Ill.Dec. 891, 363 N.E.2d 838.
If the court determines that the defendant committed multiple acts, the court moves on to the second step and determines whether any of the offenses are lesser-included offenses. Harvey, 211 Ill.2d at 389, 286 Ill.Dec. 124, 813 N.E.2d 181; Rodriguez, 169 Ill.2d at 186, 214 Ill.Dec. 451, 661 N.E.2d 305. If any of the offenses are lesser-included offenses, then, pursuant to King, multiple convictions are improper. Harvey, 211 Ill.2d at 389, 286 Ill.Dec. 124, 813 N.E.2d 181; Rodriguez, 169 Ill.2d at 186, 214 Ill.Dec. 451, 661 N.E.2d 305. If none of the offenses are lesser-included offenses, then multiple convictions may be entered. Harvey, 211 Ill.2d at 389-90, 286 Ill.Dec. 124, 813 N.E.2d 181; Rodriguez, 169 Ill.2d at 186, 214 Ill.Dec. 451, 661 N.E.2d 305.
Count I of the indictment charged defendant with home invasion in that he "knowingly and without authority, entered the dwelling place of Diana Fure, * * * knowing William Cook to be present within that dwelling place and intentionally caused injury to William Cook, in that he struck William Cook about the body with a metal pole." (Emphasis added.) Count II of the indictment charged defendant with aggravated battery in that he, "in committing a battery, * * * without legal justification, and by use of a deadly weapon, knowingly caused bodily harm to William Cook, in that he struck William Cook about the body with a metal pole." (Emphasis added.)
Defendant argues that we must vacate his conviction of aggravated battery because it is based on the identical act on which the home invasion charge was based: inflicting injury by striking William about the body with a metal pole. The *1265 State responds that the multiple convictions are proper because defendant's entry into the home was a separate act on which the home invasion charge was based. The State alternatively contends that the evidence at trial indicated that defendant struck William about the body three times and that each injury supports a separate conviction.
The State argues that this case is governed by People v. Tate, 106 Ill.App.3d 774, 62 Ill.Dec. 522, 436 N.E.2d 272 (1982), and its progeny. In Tate, a jury found the defendant guilty of home invasion and aggravated battery based on evidence that the defendant entered the victim's home and stabbed her once. The charging instrument alleged that the defendant committed home invasion in that he entered the dwelling without authority and inflicted an "injury" (Ill.Rev.Stat.1979, ch. 38, par. 12-11(a) (now 720 ILCS 5/12-11(a) (West 2002))) and committed aggravated battery in that he inflicted "great bodily harm" during a battery (Ill.Rev.Stat.1979, ch. 38, par. 12-4 (now 720 ILCS 5/12-4(a) (West 2002))). Tate, 106 Ill.App.3d at 778, 62 Ill.Dec. 522, 436 N.E.2d 272.
The Appellate Court, Fourth District, considered whether the two convictions were "`carved'" from the same act, thereby violating King's one-act, one-crime mandate. Tate, 106 Ill.App.3d at 778, 62 Ill.Dec. 522, 436 N.E.2d 272. The court concluded that, although a single stab accounted for the "great bodily harm" received in the aggravated battery and the "injury" received in the home invasion, "the entry by the assailant in the * * * home was a separate act which was an important and required part only of the home invasion offense." Tate, 106 Ill.App.3d at 778, 62 Ill.Dec. 522, 436 N.E.2d 272. The court held that the separate act of entering the home supported the home invasion conviction, concluding that "[w]e do not take the opinion to hold that a person cannot be guilty of two offenses when a common act is part of both offenses or part of one offense and the only act of the other. No such case has been called to our attention." Tate, 106 Ill.App.3d at 778-79, 62 Ill.Dec. 522, 436 N.E.2d 272. Following Tate, the Appellate Court, First District, reached a similar result when considering the same issue. See People v. Doe, 175 Ill.App.3d 371, 380, 124 Ill.Dec. 863, 529 N.E.2d 980 (1988) ("Concurrent convictions for aggravated battery and home invasion can be proper even though the indictment charges the same physical harm to the victim as the basis for both crimes"). Tate and Doe, therefore, support the State's claim that the two counts were not insufficient for alleging the infliction of a single injury (i.e., striking William about the body with the pole) because the entry into the home was a separate act on which the home invasion charge was based.
Defendant argues that Tate and Doe are outdated and no longer viable. We disagree. Our conclusion is supported by Rodriguez, in which the supreme court recently emphasized that a person can be guilty of two offenses when a common act is part of both offenses. Rodriguez, 169 Ill.2d at 188, 214 Ill.Dec. 451, 661 N.E.2d 305. In Rodriguez, the defendant was charged with aggravated criminal sexual assault and home invasion. The aggravated criminal sexual assault count alleged that the defendant committed an act of sexual penetration and displayed, or threatened the victim with, a gun. The home invasion count alleged that the defendant unlawfully entered the victim's dwelling and threatened her with imminent use of force while armed with a gun. The court concluded that, although these offenses shared the act of threatening the victim with a gun, the offenses were predicated on separate physical acts: the "[d]efendant's *1266 unlawful entry into the victim's bedroom was an overt or outward manifestation that supported a different offense, i.e., home invasion." Rodriguez, 169 Ill.2d at 188-89, 214 Ill.Dec. 451, 661 N.E.2d 305. The interrelationship of the multiple acts did not preclude multiple convictions under King. Rodriguez, 169 Ill.2d at 189, 214 Ill.Dec. 451, 661 N.E.2d 305.
In People v. Schrader, No. 1-02-1565, ___ Ill.App.3d ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2004 WL 2192550 (September 30, 2004), the evidence indicated that when the defendant entered a store armed with a shotgun, announced a "stick-up," and took money and food stamps from the merchant's cash register, he committed armed robbery in that he threatened force and took the property of another while armed with a dangerous weapon. The evidence also indicated that when the defendant kicked the merchant in the back while holding a shotgun, he satisfied the elements of armed violence; he committed a felony, aggravated battery, while armed with a dangerous weapon. The Appellate Court, First District, concluded that, although the two offenses shared the common act of the defendant wielding a gun, the defendant committed two separate and distinct acts, and their interrelationship did not preclude multiple convictions. Schrader, slip op. at 11-12, ___ Ill.App.3d at ___-___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2004 WL 2192550, citing Rodriguez, 169 Ill.2d at 189, 214 Ill.Dec. 451, 661 N.E.2d 305. The appellate court emphasized the inconsequence of the armed violence occurring during the armed robbery, because "`[t]wo separate acts do not become one solely because of proximity in time.'" Schrader, slip op. at 12, ___ Ill.App.3d at ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2004 WL 2192550, quoting People v. Pearson, 331 Ill.App.3d 312, 322, 264 Ill.Dec. 487, 770 N.E.2d 1183 (2002), citing People v. Myers, 85 Ill.2d 281, 287-88, 55 Ill.Dec. 389, 426 N.E.2d 535 (1981).
In this case, the home invasion and aggravated battery counts alleged a common act: the striking of William about the body with a metal pole. However, defendant can be guilty of two offenses even though this act is common to both offenses. See Rodriguez, 169 Ill.2d at 188, 214 Ill.Dec. 451, 661 N.E.2d 305. In agreement with Rodriguez, Tate, and Doe, we hold that defendant's convictions of aggravated battery and home invasion do not violate one-act, one-crime principles despite the infliction of only one injury because defendant's entry into the home was a separate act on which the home invasion charge was based.
Defendant argues that the recent supreme court case of People v. Crespo, 203 Ill.2d 335, 273 Ill.Dec. 241, 788 N.E.2d 1117 (2001), requires a different result. We disagree. In Crespo, a jury found the defendant guilty of, inter alia, (1) armed violence for committing an aggravated battery while armed with a knife that had a blade more than three inches long, (2) aggravated battery for stabbing the victim with a deadly weapon, and (3) aggravated battery for stabbing the victim and causing great bodily harm. Crespo, 203 Ill.2d at 342-43, 273 Ill.Dec. 241, 788 N.E.2d 1117. The evidence at trial indicated that the defendant stabbed the victim three times, and the supreme court noted that each stabbing could have been the basis of a separate conviction. Crespo, 203 Ill.2d at 344, 273 Ill.Dec. 241, 788 N.E.2d 1117.
However, the supreme court concluded that the counts as charged merely offered different theories of criminal culpability because the counts used only the terms "stabbing" and "stabbed" without differentiating the separate stab wounds. Crespo, 203 Ill.2d at 342, 273 Ill.Dec. 241, 788 *1267 N.E.2d 1117. The court reaffirmed a defendant's fundamental right to be informed of the nature and cause of the criminal accusations against him so he may prepare a defense and so the charged offense may serve as a bar to a subsequent prosecution for the same conduct. Crespo, 203 Ill.2d at 345, 273 Ill.Dec. 241, 788 N.E.2d 1117.
Concluding that the defendant learned for the first time on appeal that the State considered each of the separate stabs to be a separate offense, the court held that "the indictment must indicate that the State intended to treat the conduct of [the] defendant as multiple acts in order for multiple convictions to be sustained." Crespo, 203 Ill.2d at 345, 273 Ill.Dec. 241, 788 N.E.2d 1117. The multiple convictions were improper because the indictment did not indicate that the State intended to treat the multiple stabs as multiple acts. Crespo, 203 Ill.2d at 345, 273 Ill.Dec. 241, 788 N.E.2d 1117.
In considering whether the indictment alleged the commission of multiple acts under the one-act, one-crime rule, the Crespo court focused only on the type and numerosity of injuries allegedly inflicted, because the offenses as charged consisted of no other separate acts. In other words, the Crespo court implicitly concluded that (1) the defendant's use of "a knife that had a blade of over three inches" long and use of a "deadly weapon" were, in fact, a single act and not separate acts supporting convictions of armed violence and aggravated battery, respectively. Crespo, 203 Ill.2d at 342-43, 273 Ill.Dec. 241, 788 N.E.2d 1117. This case is distinguishable because defendant's entry into the dwelling constitutes a separate act on which the home invasion charge alone was based. The home invasion count alleged defendant's entry into the home and informed defendant that the State intended to charge him with multiple offenses. The simultaneousness of the home invasion and the aggravated battery is inconsequential because "[t]wo separate acts do not become one solely because of proximity in time." See Pearson, 331 Ill.App.3d at 322, 264 Ill.Dec. 487, 770 N.E.2d 1183.
After concluding that defendant's convictions of home invasion and aggravated battery do not violate the one-act, one-crime rule, we address whether one of the crimes is a lesser-included offense of the other. A lesser offense is included if the instrument charging the greater offense, at a minimum, sets out the main outline of the lesser offense. People v. McLaurin, 184 Ill.2d 58, 104-05, 234 Ill.Dec. 399, 703 N.E.2d 11 (1998). Defendant was convicted of aggravated battery based on his use of a deadly weapon. Use of a deadly weapon is not an element of home invasion. Aggravated battery is not a lesser-included offense of home invasion because not every element of aggravated battery is included in home invasion as those offenses were charged. Moreover, home invasion is not a lesser-included offense of aggravated battery because home invasion requires the entry of a dwelling while aggravated battery does not. See Doe, 175 Ill.App.3d at 380, 124 Ill.Dec. 863, 529 N.E.2d 980.
Finally, we address defendant's challenge to the sufficiency of the evidence supporting the aggravated battery conviction. As was charged in this case, a person commits aggravated battery when he intentionally or knowingly without legal justification uses a deadly weapon other than a firearm to cause bodily harm to an individual. 720 ILCS 5/12-3, 12-4(b)(1) (West 2002). Defendant argues that the State failed to prove beyond a reasonable doubt that he used a "deadly weapon," and therefore his aggravated battery conviction must be reduced to simple battery.
*1268 When a defendant challenges the sufficiency of the evidence supporting his conviction, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. People v. Brooks, 187 Ill.2d 91, 132, 240 Ill.Dec. 607, 718 N.E.2d 88 (1999); People v. Collins, 106 Ill.2d 237, 261, 87 Ill.Dec. 910, 478 N.E.2d 267 (1985). It is the trier of fact's responsibility to determine the witnesses' credibility and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence; we will not substitute our judgment for that of the trier of fact on these matters. Brooks, 187 Ill.2d at 132, 240 Ill.Dec. 607, 718 N.E.2d 88; People v. McDonald, 168 Ill.2d 420, 448-49, 214 Ill.Dec. 125, 660 N.E.2d 832 (1995).
The State did not introduce the pole at trial, and defendant argues that the witnesses testified equivocally and unreliably as to its appearance. However, the evidence presented at trial indicated that defendant used the pole during the offenses. Kimberly and Diana testified that they saw defendant enter Kimberly's broken bedroom window with an object. Kimberly described the object as a metal pole that was approximately three feet long. Diana described the object as a pole that was approximately 16 inches long. William testified that defendant struck him with an object that appeared to be a hollow steel curtain rod or shower rod that was about two feet long. A fourth witness testified that the pole had a pinched end and appeared to be from a towel rack, and a fifth witness testified that the pole appeared to be an aluminum towel rod approximately 2- to 2 1/2-feet long. As defendant concedes, the evidence established beyond a reasonable doubt that he possessed a rigid pole that resembled metal and was 16 inches to 3 feet long.
Defendant argues that the State failed to prove that the pole was a deadly weapon, because such an object "is not likely to cause serious injury or death." However, Illinois courts have frequently noted that objects that are not per se deadly weapons may be used in such a manner as to become deadly weapons. People v. Crane, 308 Ill.App.3d 675, 683, 242 Ill.Dec. 378, 721 N.E.2d 657 (1999); People v. Day, 202 Ill.App.3d 536, 544, 148 Ill.Dec. 180, 560 N.E.2d 482 (1990); People v. Olsen, 161 Ill.App.3d 945, 949, 112 Ill.Dec. 767, 514 N.E.2d 233 (1987); People v. Van, 136 Ill.App.3d 382, 384, 91 Ill.Dec. 320, 483 N.E.2d 666 (1985). Whether defendant used the pole as a deadly weapon was a question of fact for the jury to determine. See Crane, 308 Ill.App.3d at 683, 242 Ill.Dec. 378, 721 N.E.2d 657.
William testified that defendant "jabb[ed]" him with the pole, causing three red marks along the left side of his torso, and the jury saw photographs of William's injuries as they existed on the night of the incident. The pole pierced and "mangled" William's shirt. Kimberly testified that defendant "stabbed" and "jabbed" William, and William's wife testified that defendant "hit" William. The jury could reasonably infer that defendant used the pole alternatively to strike and stab, which could result in severe bodily harm or death. We conclude that, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant used the pole as a deadly weapon in striking William. Accordingly, we reject defendant's challenge to the sufficiency of the evidence supporting the aggravated battery conviction.
*1269 For the preceding reasons, the judgment of the circuit court of Kane County is affirmed.
Affirmed.
KAPALA and GILLERAN JOHNSON, JJ., concur.