No. 2-08-0760    Filed:  6-11-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--616 |
| CHAD L. HAGLER, | ) ) | Honorable Sharon L. Prather, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the opinion of the court:

Chad L. Hagler appeals his convictions of aggravated battery of a police officer (720 ILCS 5/12--4(b)(18) (West 2006)), a Class 2 felony (720 ILCS 5/12--4(e)(2) (West 2006)), and resisting or obstructing a peace officer and proximately causing injury, a Class 4 felony (720 ILCS 5/31--1(a--7) (West 2006)), contending that he could not be convicted of both under the one-act, one-crime doctrine.  Because section 31--1(a--7) requires the act of resisting to also be the act that proximately caused the injury, and there was only one act supporting that charge and the battery charge, we vacate Hagler's conviction of resisting a peace officer.

I. BACKGROUND

In 2007, Hagler was indicted on charges arising from a May 22, 2007, incident at his home. Count I of the indictment alleged that he committed aggravated battery in that he:

"knowingly caused bodily harm to Nicholas Clesen, in that said defendant slammed a door onto Nicholas Clesen, resulting in Nicholas Clesen's right hand and forearm going through a pane of glass in the door, causing severe lacerations to Nicholas Clesen's fingers and forearm, knowing Nicholas Clesen to be a peace officer engaged in the execution of his official duties."

Count II alleged that he resisted a peace officer when he:

"knowingly resisted the performance of Nicholas Clesen of an authorized act within his official capacity, being the arrest of Chad L. Hagler, knowing Nicholas Clesen to be a peace officer engaged in the execution of his official duties, in that the said defendant ran and slammed a door and refused to be handcuffed and defendant's actions was [sic] the proximate cause of injury to officer Clesen's arm."

A jury trial was held, and Clesen testified that he was dispatched to Hagler's home after Hagler's ex-wife reported that Hagler sent suicidal instant messages to their children. Dispatch also informed Clesen that Hagler might have had an order of protection prohibiting him from communicating with his children. Another officer, Mark Gandor, was separately dispatched to the home.

The front of Hagler's home had three stairs leading to a screened-in porch with a screen door. About six feet beyond the screen door was a front door with glass panes. The officers knocked on both doors, and when there was no answer for several minutes, Clesen went to the back door. Clesen heard Gandor yell that Hagler was coming out of the front door. Clesen walked back around the corner of the house and saw Hagler standing on the steps, speaking with Gandor. Clesen and Gandor

then spoke with Hagler. During that time, Hagler had his hand on the door, holding it partially open. Clesen was about five feet away at the time.

Clesen testified that, during the conversation, he asked Hagler to step down, but Hagler refused. Hagler then admitted to having sent his mother-in-law an instant message that threatened suicide. Clesen confirmed with dispatch that there was an order of protection in place and that it had been served on Hagler. After receiving confirmation, he believed that he had probable cause to arrest Hagler for violating the order of protection and to protect Hagler because of his threats of suicide.

Clesen told Hagler to step down the stairs because he was going to arrest him, and he took a step toward Hagler. Hagler then took a step backward, and as Clesen attempted to grab him, Hagler ran back toward the open front door. Clesen ran after Hagler to try to arrest him, but Hagler continued to run toward the door. Clesen said he was about a step behind Hagler the entire time. Hagler stepped into the home, turned around, placed both hands on the door, and began to shut it while Clesen was running to stop him. As Clesen placed his hand out to try to stop the door, his hand and arm went through a pane of glass, cutting his finger and arm. Hagler was later found in an upstairs closet, bleeding from an allegedly self-inflicted wound to his arm. A few hours after the incident, Clesen learned that Hagler had not been served with an order of protection at the time of the arrest. When asked on cross-examination about the charges, Clesen stated that they both stemmed from the same door incident.

Gandor generally testified in conformance with Clesen. Gandor also testified that when Hagler started to go back up the stairs and run into the house, Clesen told him to stop and come back down. Gandor did not know if Clesen previously told Hagler that he was under arrest.

Hagler testified that, on the day of the incident, he started to exchange instant messages with his mother-in-law and that he indicated in one of them that he would harm himself. He also testified, however, that he was not actually suicidal and was seeking to persuade his wife not to proceed with a divorce. Hagler said he stepped outside to speak to the responding officers and that, when an order of protection was mentioned, he had no idea what they were talking about. Hagler stated that he heard a car door slam and saw Clesen approaching him, screaming that Hagler knew there was an order of protection and that the person who served it would be there in five minutes. Hagler said that, if that person was going to be there in five minutes, then he (Hagler) was not going to be there until then. According to Hagler, he then turned around, walked into the house, closed the door, and locked it. Hagler testified that he did not know Clesen was behind him and that, as he was locking the door, Clesen's hand came through the glass. He denied that he then used a box cutter to injure himself, stating that he got cut when Clessen broke the pane in the door. However, he admitted that he hid in the closet from the police.

There was no evidence that Hagler resisted being handcuffed. During opening and closing arguments, the State argued to the jury that Hagler resisted arrest by running away when told to stop and that he committed battery when he slammed the door, causing injury to Clesen.

The jury found Hagler guilty on both counts. Hagler never objected under the one-act, one-crime doctrine, and no posttrial motions were filed. Hagler was sentenced to probation, and he appeals.

## II. ANALYSIS

Hagler contends that the charges were based on the single act of slamming the door and that, under the one-act, one-crime doctrine, it was plain error for the court to enter convictions on both counts. Thus, he asks that we vacate his conviction of resisting a peace officer.

Hagler was charged with aggravated battery, which required the State to show that he intentionally or knowingly, without legal justification and by any means, caused bodily harm to an individual or made physical contact of an insulting or provoking nature with an individual (720 ILCS 5/12--3(a) (West 2006)), and that he knew the individual to be an officer (720 ILCS 5/12--4(b)(18) (West 2006)). He was also charged with resisting or obstructing a peace officer, which required the State to show that he knowingly resisted or obstructed the performance of a person known to be a peace officer of any authorized act within his official capacity. 720 ILCS 5/31--1(a) (West 2006). Section 31--1(a--7) provides that a person convicted of a violation of section 31--1(a) "whose violation was the proximate cause of an injury to a peace officer is guilty of a Class 4 felony." 720 ILCS 5/31--1(a--7) (West 2006). Hagler was convicted and sentenced under that section.

Hagler concedes that he forfeited the issue by failing to object at trial and failing to include the issue in a posttrial motion. People v. Enoch, 122 Ill. 2d 176, 187 (1988). However, he requests that we review the matter for plain error. The plain-error rule is a limited exception to the forfeiture rule and may be invoked only if the evidence is closely balanced or if the alleged error is so fundamental that it may have deprived the defendant of a fair trial or sentencing hearing. People v. Herrett, 137 Ill. 2d 195, 209-10 (1990). "[F]orfeited one-act, one-crime arguments are properly reviewed under the second prong of the plain-error rule because they implicate the integrity of the judicial process." People v. Nunez, 236 Ill. 2d 488, 493 (2010), citing People v. Artis, 232 Ill. 2d

156, 167-68 (2009). Allegations that a defendant's convictions violate the one-act, one-crime rule are reviewed de novo. People v. Boyd, 307 Ill. App. 3d 991, 998 (1999).

"The one-act, one-crime doctrine, articulated in People v. King, 66 Ill. 2d 551, 566 (1977), provides that multiple convictions are improper where (1) only one physical act was manifested, or (2) multiple acts were manifested, but some of the convictions are for included offenses." People v. Isunza, 396 Ill. App. 3d 127, 133 (2009). The rule requires a two-part analysis. "A court must first determine whether a defendant's conduct consisted of separate acts or a single physical act." Isunza, 396 Ill. App. 3d at 133; see People v. Rodriguez, 169 Ill. 2d 183, 186 (1996). An act is defined as " 'any overt or outward manifestation which will support a different offense.' " Rodriguez, 169 Ill. 2d at 188, quoting King, 66 Ill. 2d at 566. "If only one physical act was undertaken, multiple convictions are improper. If separate acts were undertaken, a court must then ask whether any of the offenses are included offenses. If so, multiple convictions are improper." Isunza, 396 Ill. App. 3d at 133, citing Rodriguez, 169 Ill. 2d at 186. If a defendant is convicted of more than one crime arising out of the same act, the court must reverse all of the "same act" convictions except the most serious one. People v. Lee, 213 Ill. 2d 218, 226-27 (2004).

Some appellate courts have applied a six-part test, first enunciated in People v. Baity, 125 Ill. App. 3d 50 (1984), to determine whether there was a single act: "the existence of an intervening act or event; the time interval between successive parts of defendant's conduct; the identity of the victim; the similarity of the acts performed; whether the conduct occurred at the same location; and prosecutorial intent as reflected in the charging instrument." Rodriguez, 169 Ill. 2d at 188, citing Baity, 125 Ill. App. 3d at 52-54. However, our supreme court has declined to address the merits of this test and has given the following caution: "a court must not lose sight of the forest for the trees.

The definition of an 'act' under the King doctrine remains simply what this court stated in King: 'any overt or outward manifestation which will support a different offense.' " Rodriguez, 169 Ill. 2d at 188, quoting King, 66 Ill. 2d at 566.

When a common act is part of both offenses, or is part of one offense and the only act of another, multiple convictions can still stand. The key point is whether there is an "act" under King that will support a different offense. For example, in People v. Marston, 353 Ill. App. 3d 513, 515 (2004), the defendant broke through the window of his girlfriend's bedroom and struck a man there with a metal pole. A count charging the defendant with home invasion alleged that the defendant " 'knowingly and without authority, entered the dwelling place of [the girlfriend], *** knowing [the man] to be present within that dwelling place and intentionally caused injury to [the man], in that he struck [the man] about the body with a metal pole." (Emphasis in original.) Marston, 353 Ill. App. 3d at 517. Another count, charging the defendant with aggravated battery, provided that the defendant, " 'in committing a battery, *** without legal justification, and by use of a deadly weapon, knowingly caused bodily harm to [the man], in that he struck [the man] about the body with a metal pole.' " (Emphasis in original.) Marston, 353 Ill. App. 3d at 517.

The defendant was convicted on both counts and, on appeal, he argued that his conviction of aggravated battery must be vacated because it was based on the same physical act as the home invasion--striking the man with a metal pole. Marston, 353 Ill. App. 3d at 517. We disagreed, holding that a defendant can be convicted of two offenses even when a common act is part of both offenses or when the common act is part of one offense and the only act of the other offense. Marston, 353 Ill. App. 3d at 518. Thus, the conviction of aggravated battery could stand, even though striking the man with the metal pole was the only act of that offense and the same striking of

the same man was also part of the home invasion. Marston, 353 Ill. App. 3d at 518. What justified a finding that the home invasion and the aggravated battery were not based on the same physical act was the fact that the home invasion also required that the defendant entered the girlfriend's home, an act not part of the aggravated battery. Marston, 353 Ill. App. 3d at 518.

Although sharing a common act can allow two convictions to stand, there must be an act that will support a separate offense. Addressing circumstances similar to the present case, the Third District held that convictions of resisting a peace officer and aggravated battery were both premised on the same physical act. People v. Keefer, 229 Ill. App. 3d 582, 584 (1992). There, the defendant was told by an officer that, if he did not cooperate, he would be charged with resisting arrest. The defendant then struggled with the officer, grabbed and bent the officer's fingers, pushed the officer into a wall, and began swinging at the officer. He was then subdued by two other officers. Keefer, 229 Ill. App. 3d at 583. The defendant was charged with aggravated battery on the basis that he knowingly made physical contact of an insulting or provoking nature with the officer in that he grabbed and bent the officer's fingers and slammed the officer against a wall. The resisting-a-peace-officer charge was based on the fact that the defendant " 'resisted and struggled' " with the officer. Keefer, 229 Ill. App. 3d at 584. Applying three factors of the Baity test--the time interval between the successive parts of the defendant's conduct; the existence of an intervening act or event; and whether the conduct occurred at the same location--the court held that both convictions were based on the same act. Keefer, 229 Ill. App. 3d at 584. The court stated that both were based on "precisely the same struggle," there was no interruption of that struggle, and there was no intervening act between parts of the struggle. Keefer, 229 Ill. App. 3d at 584. Thus, the court vacated the resisting conviction. Keefer, 229 Ill. App. 3d at 585. However, Keefer has been criticized by the First District

because it applied part of the Baity test without discussing King. People v. Pearson, 331 Ill. App. 3d 312, 322 (2002).

Here, both offenses shared the common act of Hagler slamming the door onto Clesen's hand when he knew that Clesen was an officer. In the case of aggravated battery, that was the only act necessary to prove the crime. The resisting count also was based on this act because the act was the proximate cause of injury, making the crime a Class 4 felony. However, the State argues that Hagler's act of running when told to stop was a separate and distinct act to support the first elements of the charge--knowingly resisting or obstructing the performance of an officer. Thus, the State contends that under Marston, the charges share an act, but Hagler's act of running when told to stop was an additional act that separates the resisting charge from the aggravated battery charge.

At first blush, the State's position appears to fit with the reasoning in Marston, but when the specific language of section 31--1(a--7) is considered, Hagler's act of running when told to stop was not the basis of the offense that he was convicted of. Under that section, a person who resists a peace officer, and "whose violation was the proximate cause of injury[,] is guilty of a Class 4 felony." (Emphasis added.) 720 ILCS 5/31--1(a--7) (West 2006). That language specifically defines the initial violation of resisting a peace officer as the act that proximately caused the injury. Thus, Hagler's conviction under section 31--1(a--7) was necessarily premised on his act of slamming the door on Clesen's hand instead of on the simple act of running away when told to stop, which would support a conviction under only section 31--1(a).[1] Accordingly, both convictions were based solely on Hagler's act of slamming the door on Clesen's hand, thus violating the one-act, one-crime doctrine.

---

[1]The State does not argue alternatively that we should reduce the resisting conviction to one under section 31--1(a).

III. CONCLUSION

The charges were based on the same single act. Accordingly, under the one-act, one-crime doctrine, we vacate Hagler's conviction of resisting a peace officer. The judgment of the circuit court of McHenry County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

McLAREN and BOWMAN, JJ., concur.