2020 IL App (1st) 181505-U
No. 1-18-1505
Order filed October 23, 2020

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 21318 |
| | ) | |
| WILLIAM WEATHERSBY, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE GRIFFIN delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm defendant's conviction for aggravated battery of a peace officer over his contention that the State failed to prove the indictment's allegation that he "punched and kicked" a police officer. We also reject defendant's contention that his conviction for resisting or obstructing a peace officer should be vacated under the one-act, one-crime rule because it was based on the same physical act as his conviction for aggravated battery.

¶ 2     Following a bench trial, defendant William Weathersby was convicted of aggravated battery of a peace officer and resisting or obstructing a peace officer. The trial court sentenced defendant to respective, concurrent terms of four and three years' imprisonment. On appeal, he contends that his aggravated battery conviction must be reversed because the State failed to prove

beyond a reasonable doubt that he made contact of an insulting or provoking nature by punching and kicking an officer, as alleged in the indictment. In the alternative, he argues that his conviction for resisting or obstructing a peace officer should be vacated under the one-act, one-crime rule because it was based on the same physical act as his conviction for aggravated battery. For the following reasons, we affirm.

¶ 3    Defendant was charged in a 14-count indictment with 12 counts of aggravated battery to a peace officer (720 ILCS 5/12-3.05(d)(4) (West 2014)) and two counts of resisting or obstructing a peace officer (720 ILCS 5/31-1(a-7) (West 2014)). The State proceeded to trial on four counts of aggravated battery: counts VII, VIII, X, and XI. Count VII alleged that defendant "knowingly caused bodily harm to Edward Barksdale, to wit: [defendant] punched and kicked Officer Barksdale about the body" while Barksdale "was performing his * * * official duties." Count VIII alleged that defendant "knowingly caused bodily harm to Edward Barksdale, to wit: [defendant] punched and kicked Officer Barksdale about the body" and that Barksdale "was battered to prevent performance of his * * * official duties." The other two aggravated battery counts alleged that defendant "made physical contact of an insulting or provoking nature with Edward Barksdale, to wit: [defendant] punched and kicked Officer Barksdale about the body" while he was performing his official duties (count X) and to prevent performance of his official duties (count XI). The State also proceeded to trial on one count of resisting or obstructing a peace officer (count XIV), which alleged that defendant "knowingly resisted or obstructed the performance" of Barksdale and was the proximate cause of an injury to Barksdale. The State nol-prossed the remaining counts.

¶ 4    At trial, Barksdale testified that at on the evening of October 30, 2014, he was on patrol with Officer Meers and Officer McCree in an unmarked vehicle. As they passed a parking lot, they

saw defendant and another male engage in "some type of hand to hand transaction." The officers drove into the parking lot. Barksdale approached defendant while McCree and Meers approached the other male. Barksdale asked defendant "if he had anything on his person that he shouldn't have." Defendant responded that he had "a couple bags of weed." Barksdale searched defendant and recovered a bag containing smaller plastic bags with suspected cannabis.

¶ 5    Barksdale asked for defendant's name and date of birth. Barksdale used a hand-held radio to relay that information to run defendant's name through a database. A "tone alert" came through the radio, signaling that defendant had an active warrant. Barksdale asked defendant to turn and place his hands behind his back. Defendant initially complied, but then dispatch related over the radio that defendant had an active warrant for homicide. At that point, defendant "snatched away" from Barksdale, "[s]pinned around and said I didn't kill nobody."

¶ 6    Barksdale told defendant to follow his orders. Defendant repeated that he did not kill anyone and began "side stepping away from" Barksdale. Meers pulled out a taser and told defendant to comply. Meers attempted to tase defendant, but due to defendant's thick clothing the prongs failed to connect. Defendant pulled the prongs from his clothing and started running, with Meers in pursuit. When Meers reached out to grab defendant, defendant picked Meers "up and off his feet and they were like hugged up." Barksdale saw defendant punching Meers "about the body and in the head area."

¶ 7    Barksdale caught up to them in the middle of the street and screamed at defendant to stop hitting Meers. Barksdale again told defendant to comply with the officers' orders or he would be tased. Barksdale attempted to tase defendant; one taser prong struck defendant in the face, but the other prong did not connect. The three men "all began to tussle" and fell to the ground. Defendant

punched and kicked Barksdale and Meers. Barksdale was struck "multiple times. More than seven." After McCree arrived, the three officers were able to handcuff defendant. Asked if he was injured during the incident, Barksdale testified that he had "minor bruising and scrapes to [his] knees."

¶ 8 Fred Dunlap testified that he was in a restaurant parking lot with a rolled marijuana cigarette in his mouth when he was approached by a male (later identified as defendant), whom he did not know. An unmarked vehicle entered the parking lot, and three police officers exited. One of the officers approached Dunlap, and the other two approached defendant. The officers asked Dunlap and defendant to identify themselves and "ran our names" over their radio. Dunlap heard on the radio that his name was "all clear" but that "the other guy [defendant] was wanted in Riverdale for [a] murder."

¶ 9 At that point, defendant's "demeanor started to change" and he "moved back from the officers." The officers tried to stop defendant from leaving. Dunlap saw defendant and two officers "wrestling," and that defendant was trying to "push them off of him." Defendant made contact with the officers when he pushed them. The third officer placed Dunlap into the police car, and Dunlap did not see any further interaction between defendant and the officers.

¶ 10 On cross-examination, Dunlap denied that he spoke to defendant or exchanged anything with him before the officers arrived. Dunlap did not see defendant strike or kick any of the officers. On redirect, Dunlap confirmed that defendant "pushed away from" the officers.

¶ 11 Defendant testified that he was walking by himself when an unmarked police vehicle blocked his path. He denied that he said anything to Dunlap or exchanged anything with him. After defendant gave his name to police, he heard over the radio that he had an arrest warrant for murder.

He turned around, threw his hands up in the air, and began "pleading my case saying you got the wrong person." Defendant denied that he ran and stated that Barksdale pulled out a taser while his hands were in the air. Barksdale and other officers tased him in the head, back, and chest. Defendant was "electrocuted," fell to the ground and could not move.

¶ 12     Defendant testified that Barksdale fell on top of him, bent defendant's middle finger back, and "popped [defendant's] shoulder out of place." The other two officers kicked and stomped on defendant as he was on the ground. He was eventually handcuffed and taken to a hospital, where a taser prong was removed from his face. Defendant denied that he picked up an officer or that he punched or kicked the officers.

¶ 13     On cross-examination, defendant admitted that police recovered bags of marijuana from him. He denied that he tried to back away from the police after he heard that there was a warrant for his arrest.

¶ 14     Following argument, the court noted that Dunlap's testimony corroborated much of Barksdale's testimony. The court found that defendant became "combative" once he heard about the warrant, that he "fled from the police," and that "there was a struggle with the police officers."

¶ 15     The court proceeded to find that defendant was not guilty of the charges of aggravated battery causing bodily harm (counts VII and VIII), but found him guilty of the remaining aggravated battery and resisting or obstructing a peace officer counts. The court explained its findings as follows:

> "With regards to the aggravated battery charge causing bodily harm. Officer Barksdale testified to minor bruises and scrapes to his knees. The Court find[s] the State has not met their burden of proof to show this Court that there is bodily harm.

I do believe * * * that the Defendant fought with the police, but there is not bodily harm to Officer Barksdale. Therefore Counts 7 and 8 will be a finding of not guilty.

With regards to Count 10 whether or not the Defendant made physical contact of an insulting or provoking nature with Edward Barksdale while he is performing his official duties. The Court fin[ds] the State has met their burden of proof * * * in that the Defendant had contact of an insulting or provoking nature with regards to Officer Barksdale on this date. The State has met their burden of proof [in] regards to Count 11 as well. And the Defendant's contact was of an insulting or provoking nature with Officer Barksdale in preventing him from performing his official duties. * * *

And I see proof Defendant was in fact tased. The Court finds he was tased also because of the struggle that * * * he presented to the police officers. So the Court does believe the Defendant was tased, and the Defendant was injured in this matter. However, again, the Court finds the defendant did resist with the police officers, and there was an injury. There is not bodily harm, but there was an injury. Therefore with regard to Count 14, the court finds the State has met their burden of proof beyond a reasonable doubt of resisting or obstructing a peace officer. So the findings of guilty will be on Counts 10, 11, and 14. Finding of not guilty with regard to counts 7 and 8, causing bodily harm to Officer Barksdale."

¶ 16    Defendant filed a posttrial motion, requesting that the court reconsider its findings of guilt on counts X and XI because it made no finding that he kicked and punched Barksdale as alleged

in the indictment. Alternatively, defendant's motion sought a new trial. The court denied the motion.

¶ 17    After arguments in aggravation and mitigation, the court merged count XI into count X and sentenced defendant to a four-year term for aggravated battery of a peace officer on count X. The court also imposed a concurrent three-year term for resisting or obstructing a peace officer on count XIV. Defendant's motion to reconsider sentence was denied.

¶ 18    On appeal, defendant first argues that his conviction for aggravated battery of a peace officer must be reversed because the State failed to prove beyond a reasonable doubt that he punched and kicked Barksdale, as alleged in the indictment. In setting forth this argument, defendant relies on the indictment's allegation that he "made physical contact of an insulting or provoking nature with Edward Barksdale, to wit: [defendant] punched and kicked Officer Barksdale about the body."[1] He argues that the State was required to prove this specific act of punching and kicking Barksdale, and that the court's findings reflect the State's failure to prove this "essential" element. He emphasizes that, although the trial court referenced a struggle between defendant and the officers, it did not specifically find that he punched and kicked Barksdale. Defendant thus maintains that the State "failed in its burden of proof" by not proving the acts in conformance with the charge in the indictment. On this basis, he seeks reversal of the aggravated battery conviction.

---

[1] We note that defendant argues that "his two convictions for aggravated battery must be reversed," challenging the findings of guilt on both counts X and XI.  Both of those counts included the "punched and kicked Officer Barksdale" phrase. However, only the conviction on count X, upon which the court imposed sentence, is a final and appealable order. See *People v. Relerford*, 2017 IL 121094, ¶ 71. Thus, to the extent defendant seeks to challenge the finding of guilt on the unsentenced count XI, we lack jurisdiction. See *People v. Jamison*, 2018 IL App (1st) 160409, ¶¶ 33-38 (pursuant to *Relerford*, finding no appellate jurisdiction to consider defendant's challenge to conviction on an unsentenced aggravated battery count that was merged into another aggravated battery count).

¶ 19    As a threshold matter, we note that, although defendant frames this argument as a challenge to the sufficiency of the evidence, that characterization is incorrect. Generally, when considering a challenge to the sufficiency of the evidence, a reviewing court determines whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the required elements of the crime beyond a reasonable doubt. *People v. Bradford*, 2016 IL 118674, ¶ 12. However, in this court defendant does not contend that the State failed to prove any *statutory* element of the offense of aggravated battery. See *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 68 (explaining that, where defendant argued that State failed to prove indictment's allegation that defendant "struck" victim about the body, "sufficiency of the evidence is not at issue here because the evidence was sufficient to prove defendant guilty of aggravated battery"). Rather, the basis of his claim is that the State did not prove the indictment's allegation that he "punched and kicked" Barksdale. Defendant suggests that the court had to specifically find that he committed aggravated battery in that precise manner to sustain his conviction. We disagree.

¶ 20    It is well-settled that the State " 'must prove the essential elements of the charging instrument.' " *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 67 (quoting *People v. Rotermel*, 88 Ill. 2d 541, 544 (1982)). "As set forth in section 111-3 of the Code, a defendant has a fundamental right to be informed of the nature and cause of criminal accusations made against him. [Citation.]" *People v. Espinoza*, 2015 IL 118218, ¶ 15; 725 ILCS 5/111-3(a) (West 2014). Each indictment must state the name of the accused, the name, date and county of the offense, the statutory provision alleged to have been violated, and set forth "the nature and elements of the offense charged." 725 ILCS 5/111-3(a) (West 2014); *People v. Collins*, 214 Ill. 2d 206, 219 (2005). On the other hand, "[i]mmaterial matters, or matters which may be omitted from an indictment

without rendering it insufficient or doing damage to the material averments, may be regarded as surplusage." (Internal quotation marks omitted.) *Lattimore*, 2011 IL App (1st) 093238, ¶ 67; see also *Collins*, 214 Ill. 2d at 219 ("Where an indictment charges all essential elements of an offense, other matters unnecessarily added may be regarded as surplusage. [Citations.]"). Defendant's argument thus depends upon whether the phrase "punched and kicked," as used in the indictment, was essential. Construction of the charging instrument presents a question of law, which is reviewed *de novo*. See *Espinoza*, 2015 IL 118218, ¶¶ 15-16 (reviewing *de novo* whether omission of victims' identities rendered charging instrument deficient); *People v. Rowell*, 229 Ill.2d 82, 92 (2008) (reviewing *de novo* defendant's claim that information failed to allege essential mental state element of retail theft).

¶ 21      In this case, we agree with the State that the phrase "to wit: [defendant] punched and kicked Officer Barksdale" was surplusage, rather than an essential element of the indictment. This conclusion is clear from a comparison of the indictment with the statutory language defining the form of aggravated battery alleged in count X, the count upon which defendant was convicted and sentenced. "A person commits battery if he or she knowingly without legal justification by any means * * * makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3 (West 2014). A person commits the form of aggravated battery alleged in count X when, in committing a battery, he knows the individual battered to be a peace officer performing his or her official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West 2014)).

¶ 22      Count X alleged that defendant "made physical contact of an insulting or provoking nature with Edward Barksdale, to wit; [defendant] punched and kicked Officer Barksdale about the body" while Barksdale performed his official duties. The phrase "made physical contact of an insulting

or provoking nature" describes the statutory offense of battery. That is, even without the "to wit" phrase, the indictment already contained all necessary elements: defendant's name, the date and place of offense, the statutory provision alleged to have been violated, and the nature and elements of the offense charged. *Collins*, 214 Ill.2d at 219. In other words, the phrase "to wit: [defendant] punched and kicked Officer Barksdale" was immaterial surplusage.

¶ 23    We note defendant's argument that, because "physical contact of an insulting or provoking nature" is not statutorily defined, 720 ILCS 5/12-3(a) (West 2014), as a matter of due process, the indictment required more specific allegations to inform defendant of what he was accused of. See *People v. Smith*, 99 Ill. 2d 467, 471 (1984) ("[I]t is not sufficient for an information merely to set forth the name of an offense and cite the statute which defines it as an offense; it must set forth in addition the nature and elements of the offense."). However, defendant fails to cite any authority suggesting that a battery indictment's description of the precise form of the "insulting or provoking" contact is an essential element of the indictment, or that the court must make a specific finding that the battery occurred in the precise manner alleged in the indictment. To the contrary, there is precedent that "[t]he particular details of the means defendant allegedly used do not constitute essential elements of the offense of aggravated battery." *People v. Nathan,* 282 Ill. App. 3d 608, 611 (1996) (trial court did not err in permitting amendment to indictment to add allegation that defendant bit and spit on correctional officer, in addition to striking him in the face as originally alleged). Accordingly, we reject defendant's suggestion that the court could not find him guilty of aggravated battery unless it made a specific finding that he punched and kicked Barksdale.

¶ 24    We turn to defendant's alternative argument, that his conviction for resisting or obstructing a peace officer must be vacated because it was based on the same physical act as the aggravated

battery conviction. Defendant points out that he was convicted of the Class 4 form of resisting or obstructing a peace officer, which required proof of an injury to Barksdale. See 720 ILCS 5/31-1(a-7) (West 2014) ("A person convicted for a violation of this Section whose violation was the proximate cause of an injury to a peace officer * * * is guilty of a Class 4 felony."). Defendant notes Barksdale's testimony that he received bruising and scrapes in the struggle. Defendant argues that the struggle that caused this injury comprised the "same physical act" that was the basis of his aggravated battery conviction, thus violating the one-act, one-crime rule. In turn, he urges that the conviction for resisting or obstructing a peace officer, as the less serious offense, must be vacated.

¶ 25    The State responds that there was no violation of the one-act, one-crime rule because defendant's convictions arose from "multiple, separate and distinct acts." The State urges that defendant resisted Barksdale and caused him injury when he, Barksdale, and Meers fell to the ground in the struggle to restrain defendant, and that defendant separately committed aggravated battery "when he punched, kicked, and made other insulting and provoking contact with" Barksdale.

¶ 26    Defendant acknowledges that he forfeited his one-act, one-crime argument by failing to raise this claim before the trial court. However, he urges that we review it under the plain error doctrine, which allows a reviewing court to consider an unpreserved error (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scale of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Coats*, 2018 IL 121926, ¶ 9. Our supreme court has explained that "one-

act, one-crime violations fall within the second prong of the plain error doctrine as an obvious error so serious that it challenges the integrity of the judicial process. [Citations.]" *Id*. ¶ 10. Thus, despite the forfeiture, we will address defendant's argument.

¶ 27    The one-act, one-crime rule prohibits convictions for multiple offenses that are based on precisely the same physical act. *People v. Smith*, 2019 IL 123901, ¶ 13 (citing *Coats*, 2018 IL 121926, ¶ 11). However, multiple convictions are permitted in cases " 'where a defendant has committed several acts, despite the interrelationship of those acts.' " *People v. Almond*, 2015 IL 113817, ¶ 47 (quoting *People v. King*, 66 Ill. 2d 551, 566 (1977)).

¶ 28    We perform a two-step analysis to determine whether simultaneous convictions violate the one-act, one-crime rule. *Smith*, 2019 IL 123901, ¶ 15. Under the first step, "we must first determine whether a defendant's conduct consisted of a single physical act or separate acts." *Id.* (citing *Coats*, 2018 IL 121926, ¶ 12). "Multiple convictions are improper if they are based on precisely the same physical act." *Id*. If the defendant's conduct is based on more than one physical act, the reviewing court then "proceeds to the second step, determining whether any of the offenses are lesser-included offenses. [Citation.] If not, then multiple convictions are proper." *Id.*  Whether a one-act, one-crime violation has occurred is a question of law that is reviewed *de novo. Id.*

¶ 29    In this case, defendant was convicted of aggravated battery of a peace officer and resisting or obstructing a peace officer. The aggravated battery count alleged that defendant "made physical contact of an insulting or provoking nature with Edward Barksdale, to wit: [defendant] punched and kicked Officer Barksdale about the body * * *." The State also proceeded to trial on one count of resisting or obstructing a peace officer, which alleged that defendant "knowingly resisted or obstructed the performance of" Barksdale and was the "proximate cause of an injury" to Barksdale.

¶ 30    Before considering whether defendant's conduct consisted of separate acts, we first address the argument, raised in defendant's reply brief, that the State failed to apportion his conduct in the indictment to support multiple offenses. See *People v. Crespo,* 203 Ill. 2d 335, 345 (2001) ("the indictment must indicate that the State intended to treat the conduct of defendant as multiple acts in order for multiple convictions to be sustained").

¶ 31    Based on our review of the indictment in this case, we find *Crespo* distinguishable. Whereas the indictment in *Crespo* charged multiple offenses based on the same conduct, in this case the State charged defendant with aggravated battery and resisting or obstructing a peace officer based on separate conduct. See *id.* at 342. The charge of aggravated battery upon which he was convicted (count X) alleged that defendant, "*in committing a battery * * * * made physical contact of an insulting or provoking nature with Edward Barksdale, to wit: [defendant] punched and kicked* Officer Barksdale about the body" while Barksdale was performing his official duties. (Emphasis added). In contrast, the count underlying defendant's conviction for resisting or obstructing a peace officer alleged that he "knowingly resisted or obstructed the performance of Edward Barksdale" and was the proximate cause of an injury to Barksdale. These charges do not allege the same conduct. First, the "punched and kicked" phrase of the aggravated battery count is not present in the charge for resisting or obstructing a peace officer. Moreover, while the aggravated battery count alleges that defendant made "physical contact of an insulting or provoking nature," no such physical contact is alleged in count XIV's charge that he "resisted or obstructed" Barksdale. Indeed, no such contact is required to prove resisting or obstructing a peace officer. 720 ILCS 5/31-1(a) (West 2014); see also *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 47 ("Passive acts that impede an officer's ability to perform his duties, such as repeatedly

refusing an order to exit a vehicle, can be a violation of section 31-1(a) [citation]"); *People v. Miller*, 199 Ill. App. 3d 603, 610 (1990) ("Resisting a peace officer is a separate crime which does not require establishment of battery. [Citations.]"). As such, the indictment here does not resemble the situation in *Crespo*.

¶ 32   That said, we turn to the first step of the one-act, one-crime analysis to consider whether defendant's conduct consisted of separate acts or a single physical act. Our supreme court has established that "the definition of an 'act' for purposes of this analysis is simply 'any overt or outward manifestation which will support a different offense." *Smith,* 2019 IL 123901, ¶ 18 (quoting *King*, 66 Ill. 2d at 566). A person "can be guilty of two offenses when a common act is (1) part of both offenses or (2) part of one offense and the only act of the other offense." *Id.* (citing *Coats*, 2018 IL 121926, ¶ 15). For example, our supreme court recently held that the one-act, one-crime rule was not violated by convictions for robbery and aggravated battery, even where both involved the same common act, *i.e.* a single punch to the victim. *Smith,* 2019 IL 123901 ¶¶ 17-23. Our supreme court recognized that the "punch supported the aggravated battery conviction and served as the force necessary to effectuate the robbery." *Id.* ¶ 22. However, the punch "was only part of the wrongful conduct of the robbery offense," which also required a taking of property. *Id.* Because the robbery required this separate act, the two offenses involved "interrelated" acts but "were not carved from precisely the same physical act." *Id. ¶* 23.

¶ 33   Applying the first step, we determine that defendant's convictions for aggravated battery and resisting or obstructing a peace officer were not based on a single, physical act. Although defendant invites us to view the entirety of his resistance and ensuing "struggle" with police as a single, unified act, we decline to do so where the evidence showed, and the court found, multiple

overt acts over the course of the incident. These multiple acts supported separate convictions for aggravated battery and resisting a peace officer.

¶ 34    The State's evidence did not describe a single simultaneous act of resisting arrest. Rather, the evidence established a series of acts by defendant, eventually resulting in a struggle requiring three officers to subdue him. The evidence showed that, once defendant heard about an outstanding warrant, he turned around, pushed officers, and attempted to flee. After Meers attempted to use a taser on defendant, defendant picked up Meers and they were "hugged up." Barksdale then attempted to help Meers apprehend defendant. During the struggle with both officers, defendant punched and kicked them. Defendant was not subdued until a third officer arrived to help. Although defendant's actions in resisting arrest and the ensuing struggle with police were interrelated, they comprised multiple overt acts.

¶ 35    In reaching this conclusion, we acknowledge that the trial court specifically found that Barksdale suffered "minor bruises and scrapes to his knees"; this finding satisfied the element of an injury to Barksdale for purposes of his conviction for resisting or obstructing a peace officer. 720 ILCS 5/31-1(a-7) (West 2014) (requiring "injury" to peace officer). However, at no point did the court find that *the very same act of resistance* (*i.e.*, the act that caused Barksdale's injury) was also the basis for finding that the State had proven contact of an insulting or provoking nature, for purposes of the aggravated battery conviction.[2] Rather, it is apparent that the court found him guilty of aggravated battery based on one or more independent acts of "physical contact of an

_____

[2] Indeed, the court specifically declined to find that the aggravated battery of Barksdale caused him bodily harm, as would support a finding of guilt on counts VII and VIII. Since the only evidence of injury to Barksdale was the scraping and bruising of his knees (which corresponded to the injury element of defendant's conviction for resisting or obstructing a peace officer), it follows that the court must have found other, non-injurious contact of an insulting or provoking nature to support his aggravated battery conviction under count X.

insulting or provoking nature," given the testimony that defendant pushed, punched and kicked Barksdale.

¶ 36    Because there was evidence of multiple acts supporting the different convictions, we reject defendant's suggestion that this case is similar to *People v. Hagler*, 402 Ill. App. 3d 149 (2010). The defendant in *Hagler* was convicted of aggravated battery of a peace officer, as well as the Class 4 form of resisting or obstructing a peace officer, proximately resulting in injury. *Id.* at 149-50. In *Hagler*, this court vacated the defendant's conviction of resisting or obstructing a peace officer, after concluding that both offenses were premised solely on a single common act, *i.e.*, defendant slamming a door on an officer's hand. *Id.* at 155. Here, unlike *Hagler*, there was evidence of multiple acts that could separately support the court's finding of guilt for aggravated battery of Barksdale in addition to the act of resistance that supported his conviction for resisting or obstructing a peace officer.

¶ 37    Finally, applying the second step of the one-act, one-crime rule, we do not find that either of the offenses of which defendant was convicted is a lesser-included offense. Under the "abstract elements" approach, we compare the statutory elements of the offenses to determine if one is a lesser-included offense of another. *Smith*, 2019 IL 123901, ¶ 37 (citing *People v. Miller*, 238 Ill. 2d 161, 166 (2010). If all of the elements of one offense are included within the second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second. *Id.*

¶ 38    We thus compare the elements underlying the offenses of which defendant was convicted. The elements of resisting or obstructing a peace officer are that defendant knowingly resisted or obstructed the performance by one known to him to be a peace officer, proximately causing an

injury to the peace officer. 720 ILCS 5/31-1(a-7) (West 2014). The offense of aggravated battery includes the elements of battery, *i.e.* that defendant knowingly without legal justification makes physical contact of an insulting or provoking nature with an individual (720 ILCS 5/12-3 (West 2014)). Further, the form of aggravated battery underlying defendant's conviction has the additional element of defendant's knowledge that the individual battered was a peace officer performing his or her official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West 2014)).

¶ 39    As such, not all of the elements of resisting or obstructing a peace officer are included in the aggravated battery offense, and resisting or obstructing a peace officer contains an element not included in the aggravated battery offense. See *Miller*, 238 Ill. 2d at 176 (explaining that retail theft is not lesser-included offense of burglary where "[n]ot all of the elements of retail theft are included in the offense of burglary and retail theft contains elements that are not included in burglary."). Specifically, defendant's conviction under count XIV required resisting or obstructing a police officer (which does not necessarily involve physical contact), whereas his aggravated battery conviction required physical contact of an insulting or provoking nature. 720 ILCS 5/12-3 (West 2014); see also *Kotlinski*, 2011 IL App (2d) 101251, ¶ 47. Given the different statutory elements, resisting or obstructing a peace officer is not a lesser-included offense of aggravated battery of a peace officer. Accordingly, defendant's convictions for aggravated battery of a peace officer and resisting or obstructing a peace officer do not violate the one-act, one-crime rule.

¶ 40    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 41    Affirmed.